The STATE of Utah, Plaintiff and Respondent,

v.

Edward P. CRABTREE, Defendant and Appellant.

No. 16405.

Supreme Court of Utah.

Sept. 16, 1980.

Stephen R. Madsen, Provo, for defendant and appellant.

Robert B. Hansen, Atty. Gen., Ernie Jones, Asst. Atty. Gen., Salt Lake City, for plaintiff and respondent.

HALL, Justice:

Defendant appeals his jury conviction of one count of possession of a controlled substance (heroin) with intent to distribute for value, and another count of the same offense (involving possession of cocaine).[1]

On October 12, 1978, defendant was driving north on U.S. Highway 6 between Green River, Utah, and Price, Utah, when he was observed by Utah Highway Patrolman Steven Rapich to be exceeding the speed limit. The officer pulled defendant over, and, at the officer's request, defendant produced a driver's license issued by the state of Alaska. The officer asked that defendant accompany him to his patrol car while he called in on the license and on defendant's vehicle, a stationwagon bearing Nevada license plates. While issuing the speeding citation, the officer noted a pair of hemostats protruding from defendant's coveralls, and asked to examine them. Defendant complied, and the officer immediately observed a brown residue having the odor of marijuana. Defendant was asked if he had marijuana in the car, and after a brief exchange, he produced a small bag half filled with marijuana.

Patrolman Rapich then asked permission to check the car to see whether it contained any more of the substance, which defendant granted. In the car, the officer located a duffle bag, in which defendant asserted was a pistol. The officer opened the bag and found two firearms.

1. Both in violation of U.C.A., 1953, 58–37 - 8(1)(a)(ii).

At this point, Patrolman Rapich heard back from the radio dispatcher that defendant was wanted on a fugitive warrant. Defendant was promptly arrested, handcuffed, and placed in the patrol car. The stationwagon was locked after the contents thereof (including a suitcase) were removed to the patrol car. The two then proceeded toward Price, defendant receiving the *Miranda* warning en route. The officer asked if any more firearms were concealed in defendant's possessions, to which defendant replied that there was one more in his suitcase. Defendant also stated that, if the police were going to look through the suitcase, he wished to be present, there being a large quantity of money contained therein as well.

Upon arriving at the station, Patrolman Rapich conducted defendant to a room with a table, wherein the suitcase was opened and the contents inventoried with defendant looking on. The purpose of the procedure, in the officer's words was "to make sure that I had every item that Mr. Crabtree had of his belongings listed as being in my possession now so that I could return all of it to him to both his and my satisfaction." Upon examining the contents of the suitcase, the officer found another firearm, $11,000.00 in cash, and a container filled with what he suspected was a controlled substance. The substance was later tested and proved to be heroin and cocaine.

Defendant filed a pretrial motion to suppress the evidence taken from the suitcase on the grounds that the search was conducted illegally and without his consent. The motion was denied, and defendant was convicted on both charges of possession of a controlled substance.

Defendant's basic contention on appeal is that the search made of the suitcase which contained the controlled substance forming the basis of his conviction was a denial of his constitutional right of protection from unreasonable searches and seizures.[2] He reasons that the search was not justified by the automobile exception to the warrant requirement, nor by the presence of exigent circumstances, nor was it accomplished with his consent. We hold that the police procedure followed in this case falls within the inventory search exception to the search warrant requirement, and affirm the trial court.

This Court regards as dispositive in the instant case the decision of *South Dakota v. Opperman*.[3] That case involved an automobile impounded by local police offices for multiple parking violations. Pursuant to standard procedure, the police made an inventory search of the car in order to catalog all valuables found therein. In the glove compartment, a small bag was found, which contained marijuana.[4] The defendant appealed the trial court's refusal to suppress the evidence so seized as having been obtained pursuant to an invalid search. The Court rejected the assertion, holding that the procedure which had uncovered the evidence did not constitute an unreasonable search and seizure within the meaning of the Fourth Amendment. Noting that an inventory examination of the contents of an automobile impounded by the police was a procedure justified by the need to protect private property while in police custody, by the need to protect the police against claims of stolen property, and by the need to protect the police or others from potential danger, the Court first questioned whether, indeed, the inventory was a "search" at all, judged by constitutional standards. Even given the proposition that a constitutional "search" be involved, however, the Court reasoned that the lack of a warrant infringed on no constitutional rights of defendant. No suggestion was made that the inventory

---

**2.** Amendment IV, *Constitution of the United States* and Article I, Section 14, Constitution of Utah.

**3.** 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976).

**4.** It is noted that the *Opperman* decision involves the inventory search of an automobile, rather than of a suitcase found therein. As will be seen, however, both the language of the decision and the rationale underlying the holding do not limit the matter to automobiles specifically.

was a subterfuge for investigation. The search was prompted by an awareness that the car contained valuables (several of which were visible from outside). Defendant in the action had not made any other arrangement for the disposition of his possessions. The search went no further than the glove compartment of an automobile, where, by prior ruling,[5] an individual has a diminished expectation of privacy. Given such circumstances, the inventory search survived constitutional scrutiny.

In the instant case, the arresting officer was clearly proceeding in a manner similar to the policeman in *Opperman*. Having made an arrest, he took defendant's possessions into custody for safekeeping. Defendant told the officer that his suitcase contained both a loaded firearm (a potential source of danger) and a large amount of cash (for which the department could be held responsible). In defendant's presence, the officer therefore resolved to open the suitcase and to catalog its contents.[6] No covert investigative intent is alleged. Such circumstances clearly bring the present case within the standard of reasonableness in light of the *Opperman* decision.

Numerous state courts, facing situations analogous to the one presently under consideration, have permitted the inventory search. In *Roush v. State*,[7] the defendant was arrested for reckless driving. Upon arrest, the defendant stated that there was a large sum of cash in the car, though he declined to state where, taunting the arresting officer with the claim that the police would be unable to locate it. A search of the car was made at the station for the purpose of inventory. No money was recovered, but a briefcase located in the trunk was discovered to contain illegal barbiturates. The court ruled that the search, being devoid of investigative intent, and

occasioned by defendant's own representations, was reasonable. In *State v. Keller*,[8] defendant was arrested for driving on a suspended license. After the car was towed to the impound lot, police noticed an open case on the floor of the car which contained syringes and other drug paraphernalia. Also visible was a fishing tackle box, bound closed with red wire. Upon opening the box, the officers discovered a quantity of illegal narcotics. The court upheld the search, noting the importance of the underlying purposes of inventorying a suspect's valuables taken into custody upon arrest, and abiding by the trial court's finding that the search was not for evidence. To similar effect is the case of *In re One 1965 Econoline*[9] wherein the defendant was found by police in an immobile van which appeared to have been in an accident. Defendant was incoherent and uncooperative, but eventually left the van, and was informed by police that it would have to be towed away, and that they would need to inventory the contents (to which defendant voiced neither objection nor assent). Upon opening the back of the van, police discovered a small shaving kit, which was found to contain a controlled substance. The court upheld the search, again noting that it was strictly inventory procedure, and not unreasonable by constitutional standards. The court particularly emphasized that the personal character of a shaving kit did not render the search an unreasonable intrusion, stating that the purpose of inventorying a suspect's valuables was to protect them, and that it would be illogical to bar the cataloging of items simply because they were in a place where a greater degree of privacy is anticipated, such being the very type of location where valuables most needing protection would be likely to be found. Most recently, the Indiana Supreme Court

---

5. See, e. g., *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970).

6. It is unnecessary to reach the issue of whether the character of defendant's request to be present constituted a consent to the search. Defendant's statement, however, clearly establishes a diminished expectation of privacy regarding the contents of the suitcase.

7. Fla., 203 So.2d 632 (1967).

8. 9 Or.App. 613, 497 P.2d 868 (1972).

9. 109 Ariz. 433, 511 P.2d 168 (1973).

addressed a fact situation similar to the present case and found the inventory procedure proper. In *Dearing v. State*,[10] police apprehended an armed robbery suspect. Upon arrest, the defendant asked the arresting officer to retrieve two suitcases from a bus station locker, stating that they were "all he had in the world." The suitcases were found and opened for inventory. Therein were found firearms which were introduced as evidence against defendant. The court determined that *Opperman* permitted the search. While electing to treat the inventory process as a "search," the court observed that it was not conducted in the hope of uncovering evidence, but was merely a caretaking procedure, and that, while the state's interest in conducting such a procedure had to be balanced against the individual's rights against unreasonable intrusions, the facts weighed in favor of the search, the defendant having relinquished his expectation of privacy by requesting that the bags be retrieved, much as did the defendant in the instant action by requesting that he be present during the inventory.

Defendant relies on the recent U.S. Supreme Court decision of *United States v. Chadwick*[11] (recently expanded upon in the case of *Arkansas v. Sanders*,[12] which is sufficiently similar to the former decision in all relevant respects that the two will be referred to together hereafter), for the proposition that the opening of defendant's suitcase under the circumstances of the instant case constituted an unreasonable search in violation of defendant's rights.[13] Both the *Chadwick* and the *Sanders*, decisions involved the apprehension of suspected narcotics carriers upon their departure from mass transit terminals. In both cases, police investigative techniques led the arresting officers to believe that they had proba-

ble cause to search the suspects' luggage (a suitcase in one case, a foot locker in the other). Both searches were conducted without warrants, for the express purpose of uncovering evidence to support the arrest. In both cases, the government sought to defend the search as falling within the "automobile exception" to the search warrant requirement. The resulting decisions rejected the argument, holding that the automobile exception, like all exceptions to the warrant requirement, was narrow, and did not extend to the warrantless search of luggage upon probable cause, simply because the luggage happened to be in an automobile at the time it was seized. The decisions likewise ruled that the searches were not validated as being incident to a lawful arrest.[14]

Neither decision addressed itself to the searching of luggage as a police inventory procedure following arrest on other charges. Chief Justice Burger, writing for the Court, in the *Chadwick*[15] decision, expressly stated that:

> In circumstances involving noncriminal inventory searches, where probable cause to search is irrelevant, we have recognized "that search warrants are not required, linked as the warrant requirement textually is to the probable cause concept." *South Dakota v. Opperman*, 428 U.S. 364, 370 n. 5 [96 S.Ct. 3092, 3097, 49 L.Ed.2d 1000] (1976). This is so because the salutary functions of a warrant simply have no application in that context; the constitutional reasonableness of inventory searches must be determined on other bases.

Indeed, the decision in *Dearing v. State*,[16] addresses the applicability of the *Sanders* and *Chadwick* decisions to the type of pro-

---

10. Ind., 393 N.E.2d 167 (1979).

11. 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977).

12. 442 U.S. 753, 99 S.Ct. 2986, 61 L.Ed.2d 235 (1979).

13. Supra, footnote 2.

14. The procedures used in the cited cases fell wide of the restrictions placed on warrantless searches pursuant to arrest by the case of *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969).

15. *United States v. Chadwick*, cited supra, at p. ˙ ⁻⁻ ˙.

16. Cited supra, footnote 10.

cedure here under consideration, and concludes, as have we, that *Opperman* is more nearly on point, and takes precedence.

In the light of the foregoing, the facts of the instant case clearly disclose the inapplicability of the decisions in *Chadwick* and *Sanders* to the issue presented. It is undisputed that the arresting officer was not conducting an investigative search of defendant's suitcase. The arrest was on the basis of a fugitive warrant; the suitcase was taken into custody as a matter of police practice. The arresting officer having been informed that the suitcase contained a large amount of money, the case was opened (in defendant's presence, and at his request to be present) strictly in order to inventory its contents and enable the policeman to "return all of it to him (defendant) to both his and my satisfaction."

The decision of the trial court is hereby affirmed.

STEWART, J., concurs.

CROCKETT, Chief Justice: (concurring with comments).

I agree with the main opinion in holding that the actions of Officer Rapich were justified on the basis of taking an inventory both from the standpoint of discharging his duties in a businesslike manner, and as a matter of due caution under the circumstances. However, inasmuch as defendant's contention is that he was denied his constitutional protection from unreasonable searches and seizures, I add some comments thereon.

The real question to be addressed is whether the search was unreasonable under the circumstances.[1] The standard which should be applied is whether reasonable and fairminded persons, having in mind the protections which the law should afford persons from unreasonable intrusions into their private affairs, and also the necessity of efficient investigation and enforcement of the law to protect the public from crime, would judge the search to have been unreasonable. In the performance of his duties, a police officer is not required to meet any such standard as absolute accuracy of judgment before he may act.[2] The question is one of fact to be determined by the trial court,[3] which should not be disturbed unless there is no reasonable basis in the evidence to support that determination.[4]

There is no claim nor even suspicion that Officer Rapich was anything but open and aboveboard in examining the contents of the suitcase in the presence of the defendant. This could be well–advised for the purpose of exercising precautions against explosives, or perishables, or possible later claims of items missing therefrom.

It is submitted that there is ample basis in the evidence to support the trial court's finding that there was no unreasonable search. Indeed, I go further and assert with firm conviction that, upon fair analysis of the situation the officer was confronted with, there is no basis upon which fairminded persons could believe otherwise than that the search made by the officer was in no way censurable as being highhanded, oppressive or unreasonable, but was consistent with his duties in investigating crime and enforcing the law.

In my judgment, this is but another one of the all too frequently occurring situations where a defendant, reeking with guilt, seeks to avoid his conviction because of some alleged, far–fetched claim of impropriety in his being brought to account before the law. I think it would be a lamentable shame upon the face of justice if he were allowed to succeed.

1. See express wording of Amdt. IV, U.S. Const. and Art. I, Sec. 14, Utah Const.

2. See *State v. Eastmond*, 28 Utah 129, 499 P.2d 276 (1972), citing *Draper v. United States*, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959), and other authorities.

3. *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961); *State v. Allred*, 16 Utah 2d 41, 395 P.2d 535 (1964).

4. See discussion in *Ker v. California*, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963), cited in *State v. Louden*, 15 Utah 2d 64, 387 P.2d 240 (1963).

WILKINS, Justice: (dissenting).

I respectfully dissent, believing this search was not proper as an inventory search. In *Arkansas v. Sanders*, 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979), on an informant's information that defendant would arrive aboard an airplane at the Municipal Airport, Little Rock, Arkansas, and had a green suitcase containing marijuana, police officers placed the airport under surveillance. These officers watched as defendant retrieved this suitcase from the airline baggage service and put it in the trunk of a taxicab in which he rode for several blocks before the officers stopped the vehicle. They asked the cab driver to open the vehicle's trunk and without asking permission of defendant opened this unlocked suitcase and found marijuana. Defendant was charged with the crime of possession of marijuana with intent to deliver in violation of Ark.Stat.Ann., § 82–2617 (1976). Before trial in state court, defendant moved to suppress the evidence obtained from the suitcase as violative of his rights under the Fourth and Fourteenth Amendments, Constitution of the United States, and the trial court denied his motion. Defendant was convicted, and appealed to the Arkansas Supreme Court which reversed, ruling that there had been an unlawful search of the suitcase. The U.S. Supreme Court affirmed.

I believe it wise to quote somewhat extensively from the majority opinion in *Sanders*, authored by Mr. Justice Powell, as it constitutes a statement of principles which govern Fourth Amendment violations that focus on the warrant requirement of this Amendment as it applies to *personal luggage* taken from a vehicle.

Although the general principles applicable to claims of Fourth Amendment violations are well settled, litigation over requests for suppression of highly relevant evidence continues to occupy much of the attention of courts at all levels of the state and federal judiciary. Court and law enforcement officials often find it difficult to discern the proper application of these principles to individual cases, because the circumstances giving rise to suppression requests can vary almost infinitely. Moreover, an apparently small difference in the factual situation frequently is viewed as a controlling difference in determining Fourth Amendment rights. The present case presents an example. Only two Terms ago, we held that a locked footlocker could not lawfully be searched without a warrant, even though it had been loaded into the trunk of an automobile parked at a curb. *United States v. Chadwick*, 433 U.S. 1, [97 S.Ct. 2476, 53 L.Ed.2d 538] (1977). In earlier cases, on the other hand, the Court sustained the constitutionality of warrantless searches of automobiles and their contents under what had become known as the "automobile exception" to the warrant requirement. See, e.g., *Chambers v. Maroney*, 399 U.S. 42, [90 S.Ct. 1975, 26 L.Ed.2d 489] (1970); *Carroll v. United States*, 267 U.S. 132, [45 S.Ct. 280, 69 L.Ed. 543] (1925). We thus are presented with the task of determining whether the warrantless search of respondent's suitcase falls on the *Chadwick* or the *Chambers/Carroll* side of the Fourth Amendment line. Although in a sense this is a linedrawing process, it must be guided by established principles. [442 U.S. at 757, 99 S.Ct. at 2589]

The Court continues, with an important reminder that "(i)n the ordinary case . . . a search of private property must be *both reasonable and pursuant to a properly issued search warrant*. The mere reasonableness of a search, assessed in the light of the surrounding circumstances, is not a substitute for the judicial warrant required under the Fourth Amendment." 442 U.S. at 758, 99 S.Ct. at 2590 (emphasis added). The Court then acknowledges that there are ". . . a few 'jealously and carefully drawn' exceptions (quoting from *Jones v. United States*, 357 U.S. 493, 499, 78 S.Ct. 1253, 1257, 2 L.Ed.2d 1514 (1958)) (which) provide for those cases where the societal costs of obtaining a warrant, such as danger to law officers or the risk of loss or destruction of evidence, outweigh the reasons for prior recourse to a neutral magistrate." 442 U.S. at 759, 99 S.Ct. at 2591.

The Court then pursues the automobile exception by saying that "(o)ne of the circumstances in which the Constitution does not require a search warrant is when the police stop an automobile on the street or highway because they have probable cause to believe it contains contraband or evidence of a crime," 442 U.S. at 760, 99 S.Ct. at 2591, but concludes by holding that *personal luggage* taken from an automobile does not fit within *that* exception. Its clear expression is:

> In sum, we hold that the warrant requirement of the Fourth Amendment applies to personal luggage taken from an automobile to the same degree it applies to such luggage in other locations. Thus, insofar as the police are entitled to search such luggage without a warrant, their actions must be justified under some exception to that warrant requirement other than that applicable to automobiles stopped on the highway. Where—as in the present case—the police, without endangering themselves or risking loss of the evidence lawfully have detained one suspected of criminal activity and secured his suitcase, they should delay the search thereof until after judicial approval has been obtained. In this way, constitutional rights of suspects to prior judicial review of searches will be fully protected. [442 U.S. at 766, 99 S.Ct. at 2594]

I believe that *Sanders* and *Chadwick, ante,* control here on this critical point. These cases emphasize a more elevated status of protection that luggage enjoys than other items in an automobile because "(u)nlike an automobile, whose primary function is transportation, luggage is intended as a repository of personal effects. In sum, a person's expectations of privacy in personal luggage are substantially greater than in an automobile," *Chadwick,* 433 U.S. at 13, 97 S.Ct. at 2484, and "... a suitcase taken from an automobile stopped on the highway is not necessarily attended by any lesser expectation of privacy than is associated with luggage taken from other locations. One is not less inclined to place private, personal possessions in a suitcase merely because the suitcase is to be carried in an automobile rather than transported by other means or temporarily checked or stored." *Sanders,* 442 U.S. at 764, 99 S.Ct. at 2593.

I do not agree with the majority opinion's statement that *South Dakota v. Opperman,* 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976) is dispositive here and that *Chadwick* and *Sanders* do not apply. *Opperman* does not address the significant matter involved here of *personal luggage* and *Chadwick* and *Sanders* do. These last two cases state the relevant law on this point and will not allow, in my opinion, standard inventory procedures of an automobile's contents, even though unaccompanied by an investigatory impulse, to be catapulted into a permissible search of personal luggage just because that luggage happens to come from or is identified with an automobile.

I now discuss another matter, viz., whether defendant consented to this search of his suitcase. Because the District Court made no findings on this point of consent, or addressed it at all in the ruling from the bench, and the issue is critical, I believe we should remand for that Court to make a determination concerning this matter, the testimony of which has already been taken and is in the transcript. See *United States v. Griffin,* 530 F.2d 739 (7th Cir. 1976), for a good statement on the law of consent generally and where the Court specifically notes: "The existence and voluntariness of consent is a question of fact...." Id. at 742.

One final matter should be mentioned for clarification. Though the District Court stated from the bench in ruling on the motion to suppress, that "... the search of the luggage was reasonable ... particularly in view of the fact that there was a representation (that) there was a gun in the luggage ...", the State on appeal does not pursue this point, and I believe properly so, as there is no evidentiary basis under the facts of this case that the "immediately dangerous instrumentality" exception would lie. See *Chadwick, ante,* 433 U.S. 15, n. 9, 97 S.Ct. 2485, n. 9, 53 L.Ed.2d 538.

MAUGHAN, J., concurs in the dissenting opinion of WILKINS, J.