The STATE of Utah, Plaintiff
and Respondent,

v.

Lester ROMERO, Defendant
and Appellant.

No. 16638.

Supreme Court of Utah.

Jan. 29, 1981.

John D. O'Connell of O'Connell & Yengich, Salt Lake City, for defendant and appellant.

Robert B. Hansen, Atty. Gen., Olga Agnello-Raspa, Asst. Atty. Gen., John Clark, Deputy Salt Lake Co. Atty., Salt Lake City, for plaintiff and respondent.

STEWART, Justice:

Defendant seeks reversal of a second-degree felony conviction of theft by receiving. The issues raised involve the legality of a motor vehicle search and the admissibility of subsequently derived evidence, the adequacy of the affidavit for a search warrant, the correctness of the court's refusal to compel disclosure of an informant's identity, and the constitutionality of relying on information allegedly obtained from a privileged attorney-client communication.

On August 25, 1979, defendant was stopped while driving a pickup truck and arrested on a matter not in issue here by Investigator Charles Collins of the Salt Lake County Attorney's Office. Defendant informed the investigator that the vehicle belonged to Golden Circle Investment Corporation. He claimed neither a proprietary nor possessory interest in the truck or its contents. Although it was registered to Golden Circle Investment by Lester Romero, defendant, the defendant explained the use of his name was merely a result of his status as maintenance man for the company. Collins was unable to contact Bill Hamilton, who defendant said was the spokesman for Golden Circle Investment Corporation, and so he had the truck impounded and its contents inventoried. The inventory list included a description in general terms of "miscellaneous tools, fishing

gear, mechanical equipment," etc., which were not removed from the truck. Papers, envelopes, and cards were removed and secured during the inventory and described fully in the report. The report stated: "These items were all secured for further investigation and as possible evidence." At least one envelope was opened and the contents viewed.

Two months after the search, a confidential informant presented himself, on his own initiative, to Collins. A photocopy of an envelope addressed to ABC, Woods Cross, Utah, was shown the informant at his request. Thereafter the informant told Collins that he had been told by defendant that there was a stolen truck stored at ABC.

Collins then obtained information from Ron Lyle, who was serving a sentence at the Utah State Prison for an apparently unrelated offense. Lyle informed Collins of his involvement in the actual theft of the truck and gave a detailed description of the truck. He claimed personal knowledge of the presence of the truck at the Woods Cross storage yard as of December 1977. His description of the truck corroborated the confidential informant's information.

A Provo City Police Department investigator informed Collins of a report of a stolen Kenworth truck. This information corroborated many of the details obtained from Lyle, except for connecting the stolen truck with the ABC storage units. Collins obtained information from another investigator for the Salt Lake County Attorney's Office who had interviewed one of the owners of ABC. Upon being shown the "ABC" envelope found in the impounded truck, the owner described it as identical to the one in which he received a money order in the mail on October 25, 1978, for the continued rental of two units in Building "3" of the ABC complex, but he had no knowledge of what was being stored in the units.

Collins set forth the above information in his affidavit to establish probable cause to search the storage units. Defendant filed a motion to suppress the fruits of the search on the ground that the information in the affidavit was inextricably connected with the illegally seized envelope. The motion was overruled. Defendant was also unsuccessful in his objection made at trial to the use of that evidence.

Following his conviction defendant made a motion in arrest of judgment based upon newly discovered evidence to the effect that the confidential informant had obtained information from a privileged attorney-client conversation. The court found that the information was obtained by the informant from a source other than an attorney-client conversation and denied the motion.

The first issue raised by defendant is whether the warrantless search and seizure of the envelope precluded the use of the subsequently derived information, which related to the same subject matter, in an affidavit to support the issuance of a search warrant.

■ The law is well established that warrantless searches of impounded vehicles for the benign purpose of protecting the police and the public from danger, avoiding police liability for lost or stolen property, and protecting the owner's property, are permitted by the Fourth Amendment. *State v. Crabtree*, Utah, 618 P.2d 484 (1980); *South Dakota v. Opperman*, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976); *Cady v. Dombrowski*, 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973). The state contends that the facts in this case support the conclusion that the police were simply and genuinely engaged in a care-taking search of an impounded vehicle for the purpose of taking an inventory and not in a warrantless search with the purpose of uncovering criminal evidence. See *South Dakota v. Opperman, supra*.

Defendant argues, however, that the "selective" seizure which occurred in this case and the reference made to an investigatory purpose in the officer's inventory list establish a clear and strong investigatory purpose. Defendant further claims that even if the initial action was only a routine inventory, intrusion into the sealed envelope exceeded the proper scope and extent of an

inventory search, and, although the seizure of the contents of a car for safekeeping after a lawful inventory search is justified by the need to ensure the safekeeping of those contents, there is no justification shown in this case for the opening of an envelope when no security purpose was accomplished thereby. Defendant concludes that there were no extenuating circumstances justifying the further intrusion, and therefore it did not fall within the routine inventory exception to the Fourth Amendment warrant requirements.[1]

Although the facts of this case indicate that defendant may not have had the possessory or proprietary right needed to assert a Fourth Amendment claim, that issue is not properly before us. We therefore assume, without deciding, that the officer's conduct violated defendant's Fourth Amendment protection against an unreasonable search and seizure.

Defendant argues that the illegality of the search rendered the information and evidence secured thereby "fruit of the poisonous tree." *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); *Silverthorne Lumber Co. v. United States*, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319 (1920).

■ Although an unlawful seizure and subsequent testimony dealing with the subject of the seizure may have some facial connection, it does not necessarily follow that preclusion of the testimony is required. The testimony of a live witness may be so attenuated from the taint of evidence obtained by the illegal search that the evidence is not the "fruit of the poisonous tree." *United States v. Ceccolini*, 435 U.S. 268, 98 S.Ct. 1054, 55 L.Ed.2d 268 (1978). But for such evidence to be admissible, despite its connection with the illegally obtained evidence, it must spring basically from an independent motivation by the witness to make the disclosure.

In *Ceccolini* the Court considered the time period which elapsed since the illegal search and the time, place, and manner of the initial questioning in determining whether the statements were the product of detached reflection and a desire to be cooperative. In that case the Court found evidence admissible even though it was obtained from an informant who had been approached and questioned by officers as a result of information obtained during an illegal search. The willingness of the informant and her eagerness to cooperate persuaded the Court to find that the information attenuated any initial taint.

■ The facts of the instant case indicate that the statements of the confidential informant were sufficiently attenuated from the taint of the contents of the envelope so as to break the chain of causality. The arresting police officer did not intend or anticipate that the informant would come forward and provide information as a result of the seizure of the "ABC envelope." Rather, the confidential informant, on his own initiative, presented himself to the investigator two months after the initial seizure of the envelope, asked to see an addressed envelope which he described in general terms, and volunteered information which was later incorporated into an affidavit to help establish probable cause for a search warrant. Indeed, the connection between the seizure of the envelope and the information obtained from the confidential informant was less than in *Ceccolini* where the illegally seized information led the officer to initiate questioning of the informant. The information obtained from the second informant, Ron Lyle, also falls within the exception carved out by *Ceccolini*. The information was obtained two months later, was not part of a preconceived plan, and was freely submitted by the informant even though against his own interest. Furthermore, it does not appear that the seized letter directed the officer to Lyle.

1. See *Bradford v. State*, Ind.App., 401 N.E.2d 77 (1980), where intrusion into a purse was unwarranted since initially, sealing, and placing it in a locked storage room would have been sufficient. But see *State v. Crabtree*, Utah, 618 P.2d 484 (1980), where circumstances surrounding the routine inventory warranted the opening of a suitcase.

The third individual to whom the envelope was shown was an owner of ABC Storage. This encounter occurred two months after the initial seizure of the envelope and resulted in information being voluntarily given to the investigator by the owner. At this point in the investigation, there was sufficient evidence obtained from Lyle and the confidential informant connecting defendant with the ABC Storage units to support an interview with the ABC owner, and the investigation was clearly not a link in the chain of events resulting from an illegal seizure. But even if the connection between the owner's testimony and the envelope were too close to attenuate a prior illegality, the error would be harmless in light of the adequacy of the remaining information to support the issuance of a search warrant.

We therefore reject defendant's claim that the information relied on to support the search warrant was illegally obtained and turn to the second claim of error—the inadequacy of the affidavit to establish probable cause to issue a search warrant.

■ In addressing this issue, we note that a more relaxed standard governs the type of evidence that may be used to establish a finding of probable cause in an affidavit than governs the admissibility of evidence at trial, *McCray v. Illinois*, 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967), and magistrates are not confined by strict evidentiary rules or restrictions on the use of common sense in finding probable cause within an affidavit. *United States v. Ventresca*, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965).

■ The sufficiency of an affidavit supporting a search warrant depends on indicia of reliability sufficient to assure a neutral magistrate of probable cause. *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), held that it was necessary that an affidavit inform the magistrate of some of "the underlying circumstances" relied upon by an informant in drawing his conclusions and those circumstances from which the investigative officer concluded that the informant was "credi-

ble" or his information "reliable." *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), established that providing sufficient detail of alleged criminal activity serves to validate the reliability and authenticity of the information and allows the magistrate to rely "on something more substantial than a casual rumor circulating in the underworld or an accusation based merely on an individual's general reputation." 393 U.S. at 416, 89 S.Ct. at 589. *Spinelli* further held that corroborating allegations contained in a hearsay report can be considered in evaluating the sufficiency of an affidavit. *United States v. Harris*, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971), held that sufficient credibility may be established if the information given was against the informant's penal interest.

■ The affidavit in the instant case sets forth sufficient information to meet the guidelines established in the above-cited cases. The affidavit details the manner in which Lyle gathered the information and establishes the fact that Lyle spoke from personal knowledge. Detailed information was given by Lyle concerning the criminal activity, the physical appearance of the vehicle, as well as its place of storage. Furthermore, Lyle's information, containing admissions of criminal activity, carried its own indicia of credibility, *United States v. Harris, supra.*

The confidential informant's information as set out in the affidavit corroborated and validated the presence of the vehicle at the same location and included the underlying circumstances from which the confidential informant drew his conclusions.

Further corroboration was provided by the information given by Riley Goodfellow, one of the owners of the ABC Storage Company, who identified the seized envelope as one identical to that in which he received money to rent two of his storage units. The information included in the affidavit given by Lt. Gillman of the Provo City Police Department corroborated many of the specific details in Lyle's hearsay account. Together, this information provid-

ed the neutral and detached magistrate a substantial basis to support a finding of probable cause for the issuance of a search warrant.

We next address defendant's contention that the lower court erred in failing to require the disclosure of the confidential informant's identity. Rule 36 of the Utah Rules of Evidence provides:

IDENTITY OF INFORMER. A witness has a privilege to refuse to disclose the identity of a person who has furnished information purporting to disclose a violation of a provision of the laws of this state or of the United States to a representative of the state or the United States or governmental division thereof, charged with the duty of enforcing that provision, and evidence thereof is inadmissible, unless the judge finds that (a) the identity of the person furnishing the information has already been otherwise disclosed or (b) disclosure of his identity is essential to assure a fair determination of the issues.

■ The record in the instant case reveals that defendant was aware of the identity of the confidential informant. *State v. Forshee*, Utah, 611 P.2d 1222 (1980), is thus dispositive. In that case, as here, defendant's knowledge of the informant's identity invoked the first exception to the privilege of nondisclosure in Rule 36. It is that "very knowledge of the informer's identity that further served to vitiate any prejudice which may have otherwise resulted from the lower court's failure to require disclosure." *State v. Forshee, supra* at 1225. Defendant was in as good a position to produce the informant as was the plaintiff, yet failed to do so. See *State v. Forshee, supra*. Accordingly, there was no prejudicial error as a result of the nondisclosure of the confidential informant's identity.

■ Finally, defendant contends that some of the information used to obtain the search warrant and admitted at trial came from a privileged attorney-client communication. A factual issue exists in this case as to whether any information the confidential informant may have heard during a privileged attorney-client communication directly or indirectly produced any of the evidence at trial. The mere fact that the informant may have met with defendant and his counsel does not rise to the level of a constitutional violation if the testimony given by the informant at trial was neither prompted by nor the product of participation in any privileged communications. *Weatherford v. Bursey*, 429 U.S. 545, 97 S.Ct. 837, 51 L.Ed.2d 30 (1977). The trial court found that the information obtained from the confidential informant did not come from a confidential and privileged attorney-client conversation. The trier of fact made this factual determination in light of a record which supports the conclusion.

The judgment of the trial court is affirmed.

HALL, J., concurs.

CROCKETT, J., concurred in result in this case before his retirement.

WILKINS, Justice (dissenting):*

I respectfully dissent. I disagree with the disposition by the majority of several of the issues raised by this appeal.

The majority opinion proceeds on the basis that it is assumed, without deciding, that the search of the truck in question was illegal in that the search exceeded the proper limits of an inventory search. In my view, there is no doubt that the search was not a bona fide inventory procedure. This is most strongly evidenced by the fact that the investigating officer opened a sealed envelope found in the truck and thereafter made extensive use of the contents of the envelope as well as the envelope itself in his continuing investigation.

Neither can I agree with the majority's assertion, made without so deciding, "that defendant may not have had the *possessory* or proprietary right needed to assert a Fourth Amendment claim." (Emphasis

---

* WILKINS, Justice, wrote his dissenting opinion prior to his resignation.

added). Defendant's name appeared on the title to the vehicle and he was clearly in possession of the truck. I believe that under *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), defendant here had a sufficient possessory interest in the truck to assert Fourth Amendment claims relating to the search of the truck and seizure of items found therein. Furthermore, this defendant had an expectation of privacy in connection with the truck and its contents which would clearly result in his having standing to assert his claims. *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).

Moving now to the substance of the majority opinion, I am unable to agree that, in this case, the testimony of the live witnesses was "so attenuated from the taint of evidence obtained by the illegal search that [it] is not the 'fruit of the poisonous tree.' *United States v. Ceccolini*, 435 U.S. 268, 98 S.Ct. 1054, 55 L.Ed.2d 268 (1978)." Applying *Ceccolini* to the facts before us, I believe that there was no such attenuation here.

The majority in *Ceccolini* was impressed by the fact that there was an independent motivation by the witness there to disclose the information she had. Here, with respect to the confidential informant, the disclosure by that informant was inextricably connected to the envelope and other papers that had been illegally seized. Likewise, with respect to the information disclosed by Ron Lyle, there is nothing in the record to suggest that his disclosures were independently motivated or somehow insulated from the same illegally seized documents. Finally, there is no independent motivation for the disclosure made by the owner of ABC Storage because that disclosure was made at the request of the investigator after showing the illegally seized papers to the owner.

It appears that the majority requires a showing of a preconceived plan on the part of investigators to bootstrap illegally seized evidence into independent disclosure by live witnesses before those disclosures will be considered tainted by an illegal search or seizure. I submit that the situation is no less egregious when, as here, the entire framework of the investigation, including disclosures by live witnesses, finds its foundation in and is intimately connected with an illegal search and seizure.

I now discuss the sufficiency of the affidavit in support of the search warrant which was issued. I believe that the basic test as to the sufficiency of an affidavit as laid down by *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), and reaffirmed by *United States v. Harris*, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971), shows the affidavit here to be defective. Those cases require that an affidavit show (1) underlying circumstances to demonstrate the validity of an informant's conclusion of illegal activity and, (2) a basis for relying on the credibility and reliability of the informant.

With respect to the confidential informant here, neither prong of the test is met. As to the information supplied by Ron Lyle, there is no showing of credibility or reliability, but a great many underlying circumstances are set forth. However, the problem with Lyle's information is that it was over year old. I believe that the lapse of time was too great to permit any conclusion that the information was, at the time the warrant was applied for, reliable.

Finally, I am unconvinced by the majority's treatment of the issues of the refusal of the District Court to require the disclosure of the identity of the confidential informant and whether that informant provided information which came from a privileged attorney-client communication. These two issues are actually interconnected in that disclosure of the identity of the confidential informant was crucial to a determination of whether privileged information was provided to the investigators. I believe that it was "essential to assure a fair determination of [these] issues" that the identity of the confidential informant be disclosed. Rule 36, Utah Rules of Evidence.

I would reverse and remand for a new trial.

MAUGHAN, C. J., concurs with the dissenting opinion of WILKINS, J.