(No. 50507.–

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant,
v. GEORGE T. HAMILTON, Appellee.

*Opinion filed January 26, 1979.*

458

William J. Scott, Attorney General, of Springfield, and Thomas J. Difanis, State's Attorney, of Champaign (Donald B. Mackay, Melbourne A. Noel, Jr., Thomas C. Crooks, and David Cassorla, Assistant Attorneys General, of Chicago, and James E. Hinterlong, of the State's Attorneys Appellate Service Commission, of Ottawa, of counsel), for the People.

Robert B. McGee, of Chicago, for appellee.

MR. JUSTICE RYAN delivered the opinion of the court:

This case involves a motion to suppress evidence as being the fruit of an unreasonable search. The circuit court

of Champaign County denied the motion to suppress, and the defendant was convicted at a bench trial of possession of heroin, in violation of the Illinois Controlled Substances Act (Ill. Rev. Stat. 1973, ch. 56½, par. 1402(a)). The appellate court, with one justice dissenting, reversed the conviction, holding that the evidence should have been suppressed (56 Ill. App. 3d 196). The issue before this court is whether the heroin, which was found in the defendant's closed briefcase, should have been suppressed. We hold that the evidence was obtained in violation of the defendant's fourth amendment rights and affirm the holding of the appellate court.

The defendant, George Hamilton, was injured when his motor vehicle (a van) left the highway late at night and rolled down an embankment. Hamilton received cuts and bruises but remained conscious. Officer Clark of the State Police arrived at the scene of the accident and summoned an ambulance. When the ambulance arrived, Hamilton was taken to the hospital; a briefcase that had been found on the front floor of the van was also taken to the hospital. Officer Clark then began an examination of the wrecked vehicle and its contents. During the course of his examination he found three .38-caliber bullets but found no gun. A wrecker subsequently towed the wrecked vehicle to a storage area at a gasoline station.

When Hamilton arrived at the hospital, his clothing was removed and placed in storage bags. Hospital procedure required that an inventory of the patient's property be made, which was done in this instance. No police officer suggested or participated in this inventory. The nurse and orderly attending Hamilton found numerous keys, a watch, some rings, a wallet, $1,200 in cash, several bullets and, also, the locked briefcase. Curious because of the large amount of cash and the bullets, the orderly unlocked the briefcase with one of the keys found in Hamilton's possession. He sifted through the papers in the

briefcase and found a brown bag wrapped with a string or a rubber band. He opened the bag and, after briefly examining its contents, told the nurse that he thought it contained heroin. He then rewrapped the bag and put it back in the briefcase. Both he and the nurse testified that after doing so he again locked the briefcase. The keys, the valuables, and the wallet were put in a storage locker. The briefcase, apparently because it was too large for the locker, was left on a counter at the foot of the defendant's bed or cot in the emergency room.

Later, Officer Clark arrived at the hospital to interview Hamilton and to complete his accident report. When he arrived, Hamilton was being X-rayed. The officer talked with the nurse outside of the emergency room and was told about the hospital procedure for safekeeping valuables. In response to a statement by Clark concerning bullets, the nurse told him that some bullets had been found in the defendant's clothing. She also told him about the money and other valuables. Later, Clark spoke to the defendant in the emergency room in order to complete the accident report. He told the defendant that his briefcase would be returned to the van and that his property would be inventoried. Hamilton was not told that his briefcase would be opened. He made no response to the officer's statement, nor did he consent to the opening of his briefcase. The wallet and other valuables which had been brought to the emergency room from the locker were to remain at the hospital. At one point the nurse stated to the officer, "You better check the briefcase," but said nothing specific about its contents. Also, she did not tell the officer that the briefcase had been opened. The officer testified that shortly before leaving the emergency room, he opened the briefcase, noticed a small plastic envelope containing what he thought was marijuana, and then examined the contents of the brown bag in the briefcase. He said nothing to the defendant about his suspicions but

left the room with the briefcase, went to the gasoline station where the wrecked van had been taken, completed the inventory of the van, and later gave the brown bag to a detective who confirmed that the substance it contained was heroin.

The testimony at the hearing on the motion to suppress sharply conflicted as to whether the briefcase was locked or unlocked when the officer opened it. The officer stated that he merely opened the unlocked case in order to sweep the keys off of the counter into it. Both the nurse and the orderly testified that the orderly used one of the keys found on the defendant to unlock the briefcase before inspecting it, and that the orderly again locked the briefcase. The nurse testified that the officer unlocked the briefcase before he opened it. Officer Clark's testimony also varied as to the circumstances surrounding the opening of the briefcase. Although at one point he stated that he opened the unlocked case to sweep the keys off of the counter into it, at another time he stated, "After talking to Mr. Hamilton and finishing my business there, I picked up the case, opened it and noticed the contents of the case." At other times, he referred to "looking into the briefcase." When he was being questioned as to whether discovering the bullets caused him to look for a gun in the case when he opened it, he replied, "Oh yes, I looked for a gun in there." When the question was again stated, "You did look for a gun?" The officer answered, "Yes, sir, I looked for anything."

In this court the State contends that (1) the heroin was legally seized during an inventory of defendant's possessions following a traffic accident, or (2) alternatively, the heroin was discovered during a private search to which the requirements of the fourth amendment do not apply.

There are several exceptions to the warrant requirement of the fourth amendment: these include the dis-

covery of evidence as a result of a search by a private person (*People v. Heflin* (1978), 71 Ill. 2d 525), and evidence seized which was in "plain view" (*People v. Berg* (1977), 67 Ill. 2d 65). Another exception to the warrant requirement involves the discovery of evidence as a result of an inventory, a procedure which has not been conclusively established by the courts to constitute a search (*People v. Clark* (1976), 65 Ill. 2d 169). See generally Sikma, *Collateral Search: A Survey of Exceptions to the Warrant Requirement,* 21 S.D. L. Rev. 254 (1976).

In considering the first contention which the State urges in this court, that the heroin was found pursuant to an "inventory," we need not determine whether the officer had probable cause to believe that a crime had been committed, or that the briefcase contained evidence of a crime, because an inventory is not the same as an "automobile exception" search. An established exception to the warrant requirement permits the search of an automobile under circumstances which would not render permissible the warrantless search of a home. It has been established that the expectation of privacy in an automobile is significantly less than the traditional expectations of privacy existing at the home. However, under the automobile exception, a warrantless search is not justified unless the officer has probable cause to believe that the vehicle contains articles which the officer is entitled to seize. (*Chambers v. Maroney* (1970), 399 U.S. 42, 26 L. Ed. 2d 419, 90 S. Ct. 1975; *United States v. Martinez-Fuerte* (1976), 428 U.S. 543, 49 L. Ed. 2d 1116, 96 S. Ct. 3074.) Also, under proper circumstances, an automobile may be searched without a warrant as incident to a lawful arrest. See *Coolidge v. New Hampshire* (1971), 403 U.S. 443, 29 L. Ed. 2d 564, 91 S. Ct. 2022.

Unlike the "automobile exception," an inventory of a person's automobile need not be based on any belief of probable cause by the officer, nor is it necessary that it be

made in conjunction with a lawful arrest. An inventory does not in the true sense constitute a search for evidence, but is a mere listing of items of property which have come into the possession of the officer.

In *South Dakota v. Opperman* (1976), 428 U.S. 364, 49 L. Ed. 2d 1000, 96 S. Ct. 3092, the court upheld the seizure of evidence discovered in a motor vehicle during an inventory of its contents after it had been impounded. The court noted, first, that the State courts have overwhelmingly concluded that, whether or not an inventory is characterized as a search, the intrusion is constitutionally permissible by applying the fourth amendment standard of reasonableness, and, second, that the majority of the Federal courts of appeal have likewise sustained inventory procedures as reasonable police intrusions. (428 U.S. 364, 370-72, 49 L. Ed. 2d 1000, 1005-07, 96 S. Ct. 3092, 3097-99.) In *People v. Clark* (1976), 65 Ill. 2d 169, relying on *Opperman,* this court held that evidence was properly seized following its discovery during a routine inventory of a vehicle that had been towed from the street. The justification for such a warrantless intrusion into the automobile was stated in *Opperman* and in *Clark* to be threefold: protection of police officers from potential danger; protection of the owner's property while his car is in police custody; and protection against claims that the property has been lost or stolen.

The State urges that the evidence in our case was discovered as a result of an inventory of the briefcase or shortly prior thereto, and was therefore properly seized. We first note that in *Clark* this court found that inventory searches were, as a matter of procedure adopted by the police department in that case, routinely made in all cases where it was necessary to tow the car away, "and there [was] no hint whatever of any improper motive *** on the part of the arresting officer." (65 Ill. 2d 169, 175.) The facts of this case do not so clearly establish such an

innocent intrusion into the defendant's property as was apparent in *Clark*. As noted above, the officer in this case made various statements, not entirely consistent, as to why he opened the briefcase. He also stated that it was unlocked, whereas other testimony, by the orderly and by the nurse, indicated that it had been locked and that the orderly locked it again after he had searched it. The nurse testified that the officer unlocked it before he opened it. The officer also stated that as he opened it he immediately saw a plastic bag containing what he believed to be marijuana, thus causing the further investigation; neither the nurse, nor the orderly who had gone through the briefcase, mentioned anything about seeing the plastic bag of marijuana or any other questionable material except that contained in the brown paper package (heroin). It should be noted that the orderly, whose curiosity had been aroused by the finding of bullets and a large amount of cash on the defendant's person, made a rather thorough inspection of the interior of the briefcase. All of these facts cast serious doubt on the contention that the discovery by the officer was in any way related to an inventory or preparatory thereto. The initial opening of the briefcase, even by the officer's own testimony, was not for the purpose of inventorying its contents, and it was at this initial opening of the briefcase that he saw the suspicious material which led to the further inspection. However, having seen the suspicious contents, he did not then inventory the briefcase but took it with him to the service station to which the defendant's van had been towed, where he placed the briefcase on a counter and did not further inspect it until after the van had been inspected and inventoried. Only then did he reopen the briefcase and give the substance which he thought was heroin to another officer who was present for the purpose of testing. The purpose of opening the briefcase at this time was not to make an inventory of its contents but was

to search for contraband which he believed to be contained in the briefcase because of the original discovery at the hospital.

Though discussing the State's contention that this was a seizure of evidence during an inventory, we do not imply by that discussion that such inventories may be made of the contents of any and all containers which may come into the custody of the police. In fact, just the opposite is true. The inventory exception to the search warrant requirement has primarily been applied to motor vehicles (*Opperman; Clark*). The inventory exception is of rather recent origin and is supported by reasons entirely different from those which support the warrantless search of an automobile under the "automobile exception," where there must be a showing of probable cause. The reasons for an inventory search also differ from the reasons which support the search of an automobile as incident to a lawful arrest. (Sikma, *Collateral Search: A Survey of Exceptions to the Warrant Requirement,* 21 S.D. L. Rev. 254 (1976).) The question remains open in the Supreme Court. That court has recently granted *certiorari* in *Arkansas v. Sanders* (1978), 439 U.S. 891, 58 L. Ed. 2d 236, 99 S. Ct. 247, wherein the question is whether a warrantless search of an unlocked suitcase based on probable cause was authorized. Also, the Supreme Court has not decided that an inventory exception applies to evidence seized as a result of an inventory of luggage or other containers taken from an automobile in the course of an inventory of the vehicle. In fact, in Mr. Justice Powell's concurring opinion in *Opperman,* it is stated:

> "Upholding searches of this type provides no general license for the police to examine all the contents of such automobiles." (428 U.S. 364, 380, 49 L. Ed. 2d 1000, 1011-12, 96 S. Ct. 3092, 3102.)

And in footnote 7 in support of this statement, it is stated:

"There is, however, no evidence in the record that in carrying out their established inventory duties the Vermillion police do other than search for and remove for storage such property without examining its contents." (428 U.S. 364, 380 n.7, 49 L. Ed. 2d 1000, 1012 n.7, 96 S. Ct. 3092, 3102 n.7.)

In *United States v. Chadwick* (1977), 433 U.S. 1, 53 L. Ed. 2d 538, 97 S. Ct. 2476, the Supreme Court decided that a double-locked footlocker seized on a probable cause basis could not be searched under the automobile exception and stated that "a person's expectations of privacy in personal luggage are substantially greater than in an automobile." (433 U.S. 1, 13, 53 L. Ed. 2d 538, 549, 97 S. Ct. 2476, 2484.) While the Supreme Court in *Chadwick* did not deal with an inventory search of personal luggage, that question was decided by the court of appeals when it decided *Chadwick,* and review of its decision on that point was not sought. 433 U.S. 1, 5 n.1, 53 L. Ed. 2d 538, 544 n.1, 97 S. Ct. 2476, 2480 n.1.

The Court of Appeals for the First Circuit, when considering the inventory search of two locked suitcases in *Chadwick* stated:

"We see an inventory as occupying a middle ground between a criminal investigatory search, which must comply strictly with warrant and probable cause standards, and those actions which fall totally outside the fourth amendment. *** [A]n inventory may be initiated and carried on upon a less formal basis than a criminal search and will be upheld so long as it serves a proper governmental purpose and does not amount to an excessive intrusion. *** We intimate no judgment as to the propriety of inventorying unlocked suitcases, nor even locked ones given sufficient reasons, such as suspicion that there may be

explosives inside. But breaking open the two locked suitcases here was an unreasonable intrusion that exceeded any proper governmental interest shown to exist. *** [T]o protect the agents from later claims, the suitcases could have been sealed with tape which the agents could have initialled, or placed in a locked storeroom with the keys kept in an envelope along with other personal property of defendants. Forcing the locks served no apparent purpose other than to satisfy the agent's curiosity." *United States v. Chadwick* (1st Cir. 1976), 532 F.2d 773, 783-84.

Considering the validity of the alleged inventory of the defendant's briefcase, we note, as did the court of appeals in *Chadwick,* that we intimate no judgment as to the propriety of inventorying personal luggage given sufficient reasons, such as suspicion that there might be explosives inside. However, under the facts presented here, testing the reason for the inventory by the threefold test of *Opperman* and *Clark,* there exists no justification for the intrusion into the defendant's briefcase. The Supreme Court in *Chadwick,* as noted above, stated that a person's expectation of privacy is substantially greater in personal luggage than in an automobile. It is apparent in this case that the defendant had an expectation of privacy in the contents of his briefcase, and to the best of his ability he sought to safeguard this privacy. The briefcase was locked and the key was kept on his person. Although he was injured in the accident, he took the briefcase with him to the hospital, and it was kept near his bed in the emergency room. The briefcase posed no threat to the police; it could have been protected from loss or theft while in police custody by placing it in a locked locker or storage room, and the officer himself could have been protected against a later claim of theft by locking the briefcase and leaving the key at the hospital along with the defendant's other

personal belongings and by sealing the briefcase with tape and initialing it or by sealing it in some other suitable manner in the presence of the nurse. We can find no proper governmental purpose served by and no reasonable justification for the warrantless intrusion into the defendant's briefcase in which he obviously had a substantial expectation of privacy.

The State alternately contends in this court that the evidence was discovered as a result of a search by a private person. In *People v. Heflin* (1978), 71 Ill. 2d 525, 539, this court recently stated that the "constitutional proscription against unreasonable searches and seizures does not apply to searches or seizures conducted by private individuals." Numerous courts in other jurisdictions have also concluded that individual conduct, devoid of any governmental involvement, does not fall within the protection provided by the fourth amendment and is thus beyond the scope of the exclusionary rule. 1 C. Torcia, *Wharton's Criminal Procedure,* sec. 183 (1974 and Supp. 1978); Moylan, *The Fourth Amendment Inapplicable v. The Fourth Amendment Satisfied: The Neglected Threshold of "So What?",* 1977 S.I.U. L.J. 75; Annot., 36 A.L.R.3d 553 (1971 and Supp. 1978).

It appears that the overwhelming majority of private-search cases involve a private individual either directly giving the privately found evidence to the officer, or explicitly telling the officer of the illegal article found. The officer does not, himself, conduct a search for evidence but merely confirms information presented to him by a person not constrained by fourth amendment limitations. *United States v. Winbush* (6th Cir. 1970), 428 F.2d 357, is illustrative. In that case a hospital aide searched the defendant's clothing pursuant to hospital policy and discovered a number of stolen items. The aide ran after the departing officers and showed them the items she had discovered. The court admitted the evidence under the

private-search exception. Thus in *Winbush,* unlike in the instant case, the private person placed evidence which she had discovered within the plain view of the law-enforcement officers. The officers in *Winbush* conducted no second search.

In our case, the evidence was not placed before the officer but was discovered by him as a result of a second search. Not only was the evidence not placed in the officer's plain view by the nurse, but the officer was not even explicitly told by either the nurse or the orderly of its existence. We think that the nurse's words "you better check the briefcase," without more, do not constitute a sufficiently explicit announcement of privately found illegal articles to justify the officer's actions. We therefore cannot accept the State's alternate contention that the evidence was seized as a result of a private search.

One final point has not been argued in this court. However, the trial court, although finding that the evidence was discovered as a result of a private search, also stated that the plain view doctrine applied, inasmuch as the officer noticed the marijuana in the plastic bag as he was in the process of sweeping the keys off the counter into the opened briefcase. We do not agree that the plain view doctrine is applicable in this case. That exception dispenses with the need for a warrant because the process of finding an item in plain view has involved no search and no prying into hidden places for that which is concealed. When an officer in the performance of his duty lawfully discovers evidence within his view, the taking of such evidence does not constitute an unreasonable seizure (*People v. Bombacino* (1972), 51 Ill. 2d 17; *People v. Berg* (1977), 67 Ill. 2d 65). In our case the officer had no authority to open this briefcase in which the defendant had an expectation of privacy. Had the briefcase been sitting open on the counter, with its contents in view, then the plain view exception would have applied. Here,

however, the officer could only discover the evidence after opening the briefcase. There was no need to open the briefcase to put the keys inside. In fact, there was no need for the officer to take the keys with him. They could have been safely kept by the hospital. The plain view exception is not applicable under the facts of this case.

For the reasons above stated, we conclude that the fourth amendment reasonableness test of warrantless intrusions has not been met and the evidence discovered cannot be admitted into evidence. The decision of the appellate court is affirmed.

*Judgment affirmed.*