(No. 52687.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. JEFFREY BAYLES, Appellee.

*Opinion filed October 17, 1980.*

WARD and UNDERWOOD, JJ., dissenting.

William J. Scott, Attorney General, of Springfield, and Mary Jane Webb, State's Attorney, of Vienna (Donald B. Mackay and Melbourne A. Noel, Jr., Assistant Attorneys General, of Chicago, and William S. Zale of the State's Attorneys Appellate Service Commission, of Mt. Vernon, of counsel), for the People.

John H. Reid, Deputy Defender, and E. William Hutton, Assistant Defender, of the Office of the State Appellate Defender, of Mt. Vernon, for appellee.

MR. JUSTICE RYAN delivered the opinion of the court:

This appeal concerns the warrantless opening and seizing of the contents of a closed, unlocked suitcase. The circuit court of Johnson County denied the defendant's motion to suppress the evidence seized, and the defendant was convicted. The appellate court reversed, with one justice dissenting. (76 Ill. App. 3d 843.) We granted leave to appeal.

On October 15, 1977, the defendant, Jeffrey Bayles, was involved in a one-car accident in Johnson County. His automobile was found in an upside-down position in a field next to a rural highway. Defendant was not seriously injured, but was trapped inside the vehicle. His fiance was thrown from the car and killed. Several items that had been in the car were found in the field. A deputy of the Johnson County sheriff's office, following established procedure of that office, inventoried the items found and also opened closed containers and inventoried their contents. Cannabis was found and seized from within a blue cloth drawstring sack and a brown suitcase. Tinfoil packets containing what was later determined to be a controlled substance were also found in the sack. Defendant did not contest the ownership of the sack and the luggage. He did, however, seek the suppression of the cannabis and the controlled substance discovered in the containers, alleging

the violation of his constitutional right to be free from unreasonable searches and seizures. Only the contents of the suitcase are involved in this proceeding. The appellate court, with one justice dissenting, reversed defendant's conviction based on its finding that the inventory of the contents of defendant's suitcase constituted an illegal search.

Evidence concerning the inventory and the resultant discovery of the cannabis was adduced during the preliminary hearing, the hearing on defendant's motion to suppress, and the hearing on defendant's motion for a rehearing on the suppression motion. Gregory Carlock, a witness who resided near the scene of the accident, was one of the first persons to arrive at the scene. He testified that defendant told him that he had items of value in his suitcase and requested that Carlock close the suitcase, which had been thrown from the car in the accident. Carlock stated that he tucked in some clothes that were sticking out of the case, closed both latches, and rolled the tumbler on the suitcase's combination lock. Carlock testified that he told defendant that he would tell the sheriff that he had closed the suitcase and that the sheriff should watch it since it contained items of value. According to Carlock, defendant did not respond to this statement. Carlock's actions were witnessed by another neighbor, James Williams, who testified that he observed Carlock tuck the clothes in and close the brown suitcase.

Johnson County Sheriff Elry Faulkner also testified. He stated that the blue cloth drawstring bag was lying outside the car by the trunk. The sack was open to the extent that he was able to see plastic sticking out of its opening. The sheriff opened the sack and found a plastic bag containing what was later determined to be approximately 5 grams of cannabis. He also discovered some green plant material and three tinfoil packets. The sheriff did not open the tinfoil packets; it was later determined that each con-

tained one Methaqualone tablet. Faulkner shoved the plastic bag back into the sack, pulled the drawstring, and gave the sack to his deputy. The sheriff then stated that he saw a brown shaving-kit bag located inside the car. He opened the kit and discovered a large quantity of paper currency. The sheriff instructed his deputy to witness the counting of the money, which came to $1,255. Although the sheriff saw the brown suitcase situated on the ground at the rear of the car, he testified that he was unable to ascertain whether it was open. Faulkner stated that Carlock then informed him, within the hearing of his deputy, that the suitcase contained something of value.

The deputy sheriff of Johnson County, James Eugene Alsip, also testified. He stated that the sheriff was already at the scene of the accident at the time of his arrival. Sheriff Faulkner handed Alsip a blue cloth sack; the sack was closed at this time. The sheriff also had the deputy witness him count the $1,255 found in the brown shaving-kit bag. Alsip was then instructed by the sheriff to "take charge" of the property. Alsip understood this instruction to mean that he make an inventory of the items found at the scene of the accident. He overheard Carlock notify the sheriff of the presence of valuable items in the defendant's suitcase. According to Alsip, the suitcase was not fully closed. Instead, one latch was unfastened and the case was open one-half to three-quarters of an inch on that side. Alsip unfastened the other latch and opened the suitcase. Inside he found some paper currency, a plastic bag containing a brown, leafy substance, and a closed, folded-over brown grocery bag. Alsip opened the brown bag and discovered a brick of marijuana. The contents of the suitcase are the basis of the possession-of-cannabis charge involved in this case.

According to both the sheriff and the deputy, the opening of closed, unlocked containers was in accordance with the inventory procedure customarily followed by the

Johnson County sheriff's office. Sheriff Faulkner stated that it was the policy of his office to open closed, unlocked containers for the purpose of inventorying the items contained therein. He stated that he created this policy rule in order to protect both the owner of the property and the sheriff's office. Although he characterized the official activity as an inventory, the sheriff stated that he did suspect the presence of alcoholic beverages, since only one car was involved in the accident. Deputy Alsip testified that he believed an inventory of the suitcase to be necessary to protect defendant's valuables. He stated that he was aware of the discovery of the cash in the shaving-kit bag and he heard Carlock inform the sheriff of the presence of valuable items in the suitcase. Since the sheriff's office would be responsible for these items, Alsip deemed the inventory of the contents of the luggage to be necessary also for the protection of the officers. Alsip unequivocally stated that he was not looking for drugs, was not concerned for his safety, and that the inventory was not performed as a search incident to an arrest.

The fourth amendment to the Federal Constitution guarantees the individual the right to be free from unreasonable searches and seizures. In considering fourth amendment issues, our fundamental inquiry is whether or not the search or seizure was reasonable under all of the circumstances. (*United States v. Chadwick* (1977), 433 U.S. 1, 9, 53 L. Ed. 2d 538, 547, 97 S. Ct. 2476, 2482; *Cooper v. California* (1967), 386 U.S. 58, 59, 17 L. Ed. 2d 730, 732, 87 S. Ct. 788, 789-90.) The clause operates to protect persons, rather than places, from unreasonable governmental intrusions into their legitimate expectations of privacy. (*Katz v. United States* (1967), 389 U.S. 347, 351, 19 L. Ed. 2d 576, 581-82, 88 S. Ct. 507, 511.) As such, the application of the fourth amendment is not limited to the home but, instead, extends to searches con-

ducted in a variety of settings, including searches of automobiles. (*United States v. Chadwick* (1977), 433 U.S. 1, 10, 53 L. Ed. 2d 538, 547, 97 S. Ct. 2476, 2482-83.) While a search warrant is generally constitutionally required for the search of an automobile, the rule is subject to exceptions. Warrantless searches of automobiles have been upheld where incident to an arrest; under the moving-automobile exception; when the vehicle is lawfully impounded; or if valid consent for the search has been obtained. (See Annot., 26 L. Ed. 2d 893 (1970).) Although there has been no judicial pronouncement that an inventory is a search (*People v. Hamilton* (1979), 74 Ill. 2d 457, 464; see *South Dakota v. Opperman* (1976), 428 U.S. 364, 369-71, 49 L. Ed. 2d 1000, 1005-07, 96 S. Ct. 3092, 3097-98; see generally 2 W. LaFave, Search and Seizure sec. 7.4, at 563-65 (1978)), the intrusion is tested for its constitutionality by an application of the fourth amendment reasonableness standard. *People v. Hamilton* (1979), 74 Ill. 2d 457, 465; *People v. Clark* (1976), 65 Ill. 2d 169, 174; *People v. Smith* (1969), 44 Ill. 2d 82, 88.

In the instant appeal, both parties concede that the Johnson County officers conducted an inventory of the defendant's disabled vehicle. According to the State, the inventory, conducted in conformity with regular departmental procedure, was reasonable in view of the exigencies presented by the case. This is also the position of the dissenting justice in the appellate court. (76 Ill. App. 3d 843, 853.) The defendant counters by asserting that no exigencies justified the opening of the suitcase and, by so doing, the officers exceeded the permissible bounds of an inventory procedure.

The United States Supreme Court has not yet ruled specifically on whether inventories of closed containers can be reconciled with the fourth amendment guarantee. In *South Dakota v. Opperman* (1976), 428 U.S. 364, 49

L. Ed. 2d 1000, 96 S. Ct. 3092, the court upheld the inventory search of a vehicle impounded for traffic violations. In that case, police officers discovered marijuana in the vehicle's unlocked, but closed, glove compartment. The court first held that the procedure of inventorying the contents of lawfully impounded vehicles, customarily followed throughout the nation, was a reasonable measure used to further three legitimate objectives: the protection of the owner's property; the protection of the police against claims of lost or stolen property; and the protection of police from potential danger. Applying the three objectives enunciated in *Opperman*, this court has upheld the validity of an inventory search of an automobile lawfully impounded following a defendant's arrest. *People v. Clark* (1976), 65 Ill. 2d 169.

We note that the inventory in *Opperman* did not involve the opening of containers transported in the vehicle. The precedential scope of a decision is limited to the facts before the court. (*People v. Beard* (1974), 59 Ill. 2d 220, 225, *cert. denied* (1975), 421 U.S. 992, 44 L. Ed. 2d 483, 95 S. Ct. 1999.) The *Opperman* holding is confined, therefore, to cases involving warrantless inventory searches of closed, unlocked glove compartments in lawfully impounded vehicles. The language of both . the separate opinions filed in the *Opperman* case supports this conclusion. In a concurring opinion, Mr. Justice Powell stated: "Upholding searches of this type provides no general license for the police to examine all the contents of such automobiles." (*South Dakota v. Opperman* (1976), 428 U.S. 364, 380, 49 L. Ed. 2d 1000, 1011-12, 96 S. Ct. 3092, 3102.) Mr. Justice Marshall, writing for the dissenting justices, stated that "the Court's opinion does not authorize the inspection of suitcases, boxes, or other containers which might themselves be sealed, removed and secured without further intrusion." (428 U.S. 364, 389 n.6, 49 L. Ed. 2d 1000, 1017 n.6, 96 S. Ct. 3092, 3107

n.6.) Thus, the United States Supreme Court has not yet ruled specifically on whether inventories of closed containers can be reconciled with the fourth amendment guarantee to be free from unreasonable searches and seizures.

In *United States v. Chadwick* (1977), 433 U.S. 1, 53 L. Ed. 2d 538, 97 S. Ct. 2476, San Diego railroad officials notified Federal narcotics agents of their suspicion that an unusually heavy, double-locked footlocker boarded for Boston contained contraband. Federal agents in Boston met the San Diego train and arrested three men after the footlocker had been loaded into the trunk of a waiting car. The respondents and the car containing the footlocker were then taken into custody. The agents unlocked and opened the footlocker approximately 1½ hours after the warrantless arrests, finding a large quantity of marijuana. A search warrant had not been obtained, and consent to the search had not been given. The United States District Court granted the respondents' motion to suppress the seized marijuana, finding that the contraband was seized as a product of a search which violated the fourth amendment warrant requirement. The First Circuit Court of Appeals affirmed. The Supreme Court also affirmed, holding that the agents should have obtained a search warrant before opening the footlocker. In so holding, the court rejected two arguments advanced by the government. First, the government had asserted that a search of moveable, personal property legally seized in a public place does not require a warrant. According to the government, the search of the luggage should be viewed as being analogous to the warrantless search of a vehicle under the automobile exception. Under that exception, a search warrant is not required where police officers stop a vehicle on a street or highway based on the existence of probable cause to believe that it contains contraband or evidence of a crime. (See, *e.g., Chambers v. Maroney* (1970), 399 U.S.

42, 26 L. Ed. 2d 419, 90 S. Ct. 1975.) The *Chadwick* court refused to extend the automobile exception to all searches of luggage based on the fact that neither of the two policy considerations supporting the automobile exception apply to the search of luggage; that is, the court focused on the mobility of automobiles and the limited expectation of privacy in a vehicle. The court stated:

"The factors which diminish the privacy aspects of an automobile do not apply to respondents' footlocker. Luggage contents are not open to the public view, except as a condition to a border entry or common carrier travel; nor is luggage subject to regular inspections and official scrutiny on a continuing basis. Unlike an automobile, whose primary function is transportation, luggage is intended as a repository of personal effects. In sum, a person's expectations of privacy in personal luggage are substantially greater than in an automobile." (*United States v. Chadwick* (1977), 433 U.S. 1, 13, 53 L. Ed. 2d 538, 549, 97 S. Ct. 2476, 2484.)

The court then rejected the government's second argument that the warrantless search of personalty based upon probable cause was legal since the luggage searched was in the possession of persons lawfully arrested in public. The court noted that it is the potential dangers inherent in custodial arrests which obviate the need for a warrant to search the items within the immediate control of the arrestee. Since the search of the footlocker was not conducted at the time of the arrest and since the footlocker was under the government's exclusive control, the court refused to view the search as falling within the incident-to-an-arrest exception to the fourth amendment warrant requirement.

Although the *Chadwick* search was not an inventory of the contents of an impounded vehicle, we find the case

to be instructive as to the court's view of the individual's expectation of privacy in personal luggage. From the language of the opinion, we are able to glean a high privacy interest in the footlocker and, therefore, a preference for the issuance of warrants wherever possible for the search of personal luggage. We also deem important the court's refusal to extend the automobile exception to the search of the footlocker. This refusal is consistent with the court's earlier statement that "[t]he word 'automobile' is not a talisman in whose presence the Fourth Amendment fades away and disappears." (*Coolidge v. New Hampshire* (1971), 403 U.S. 443, 461-62, 29 L. Ed. 2d 564, 580, 91 S. Ct. 2022, 2035.) Finally, we note that the footlocker in *Chadwick* was locked. It is not expressly stated that there would be a diminished expectation of privacy in the footlocker if it were unlocked. (See Allen & Schaefer, *Great Expectations: Privacy Rights in Automobiles*, 34 U. Miami L. Rev. 99, 138 (1979).) We do not think, however, that the court would have reached a different result if the footlocker had been unlocked.

This conclusion is supported by the Supreme Court's more recent case of *Arkansas v. Sanders* (1979), 442 U.S. 753, 61 L. Ed. 2d 235, 99 S. Ct. 2586. In that case, Little Rock police officers, acting on a tip from a reliable informant, observed a suspect retrieve from the airport baggage claim area a green suitcase which allegedly contained marijuana. After meeting a companion, the suspect placed the suitcase in the trunk of a taxi. The officers followed the taxi and stopped the vehicle several blocks from the airport. Pursuant to the officers' request, the taxi driver opened the trunk of the automobile. The officers then opened the suitcase and discovered over nine pounds of marijuana. They did not have a search warrant and had not obtained consent to search.

Prior to the trial on marijuana-possession charges, the respondent filed a motion to suppress the evidence found

in the suitcase. The motion was denied and the respondent was subsequently convicted by a jury. The Supreme Court of Arkansas reversed the conviction, finding that no exigent circumstances were present which would justify the warrantless search of the suitcase. The United States Supreme Court agreed with the Arkansas Supreme Court in its assertion that the fact that respondent's suitcase was unlocked did not diminish his legitimate expectation of privacy in the contents of the luggage. In its application of *Chadwick*, the court rejected the State's contention that the warrantless search of the suitcase was proper under the automobile exception and held that a warrant is generally required before personal luggage can be searched. Thus, the extent to which the fourth amendment applies to luggage and other containers for personal effects does not depend upon whether the container is seized from an automobile. The court in *Arkansas v. Sanders* found the warrantless search of respondent's suitcase to be unreasonable due to the lack of exigent circumstances; that is, the police officers could have lawfully detained the respondent and secured the suitcase without endangering themselves or risking the loss of the evidence.

We note that *Opperman* involved an inventory search of an integral part of an automobile rather than an inventory of a container. While *Chadwick* and *Sanders* involved searches of containers taken from vehicles, the searches were not conducted as inventories but were based upon probable cause. Thus, the United States Supreme Court has yet to pass on the permissible limits of inventory searches of containers taken from vehicles. However, from a reading of the *Opperman, Chadwick* and *Sanders* opinions, the following principles emerge: An inventory search of an automobile is reasonable and therefore constitutionally permissible when conducted in accordance with standard, as opposed to arbitrary, law-enforcement procedures. In order for the customary inventory search to

be deemed reasonable, it must further three objectives: the protection of the owner's interest in his property; the protection of police officers as custodians of the property from claims of loss or damage; the protection of the police from risk of harm. A warrant is generally required for the search of luggage or any other container of personal effects. The warrantless search of such a container, therefore, will be deemed unconstitutional unless it can be justified under an established exception to the warrant requirement. The mere fact that the container is found in a vehicle or is seized subsequent to an arrest based upon probable cause will be insufficient to bring the warrantless search within the automobile exception or the search-incident-to-an-arrest exception.

In view of the above-stated principles and in light of our opinion in *People v. Hamilton* (1979), 74 Ill. 2d 457, we hold that the procedure of inventorying the contents of a suitcase found in a lawfully impounded vehicle is, in the absence of exigent circumstances, unreasonable and therefore in violation of the fourth amendment.

In *People v. Hamilton* (1979), 74 Ill. 2d 457, the defendant was injured in an automobile accident and was taken to a hospital. An inventory of his personal effects was performed by a nurse and an orderly in accordance with hospital procedure. During the course of the inventory, the orderly found a locked briefcase. He unlocked the case with a key found in the defendant's possession and discovered a closed bag containing what he believed, upon opening and examining its contents, to be heroin. The orderly told the nurse of his discovery. The bag was returned to the suitcase and the case was locked and placed at the foot of defendant's bed in the hospital emergency room. A police officer arrived to complete his accident report. The nurse informed the officer of some items found and stated, "You better check the briefcase." The officer then informed the defendant that his briefcase

would be returned to the disabled vehicle and his property would be inventoried. Before leaving the emergency room, however, the police officer opened the suitcase, finding the contraband.

In *Hamilton* we were unable to find the opening of the briefcase by the officer to be a valid inventory. First, we questioned the officer's motive in opening the briefcase; that is, we believed that he opened the case not for the purpose of inventorying its contents but, rather, to search for contraband. We noted the high privacy interest accorded personal luggage in both the Supreme Court and First Circuit Court of Appeals opinions in the *Chadwick* case. We then tested the inventory against the threefold test enunciated in *Opperman* and utilized in our case of *People v. Clark* (1976), 65 Ill. 2d 169. Due to the lack of danger to the police, we found no justification for the warrantless intrusion. Accordingly, we held that the State failed to meet the fourth amendment reasonableness test and, therefore, ruled the evidence was inadmissible. After a review of the record, we fail to find the existence of facts in the case before us which would warrant a result different than that reached in *Hamilton.*

The State contends that the search of the suitcase was reasonable due to the following: it was conducted in accordance with standard inventory procedures; the officers did not have improper investigatory motives; the exigencies of the automobile accident necessitated the caretaking procedures exercised; and defendant's expression of concern about an item of value justified an inventory of the contents of the suitcase. It is undisputed that the standard inventory procedure of the Johnson County sheriff's office included the opening of closed containers. While the fact that the procedure was one customarily followed is a factor supporting a finding of reasonableness (*South Dakota v. Opperman*), it is not conclusive.

The high privacy interest in the contents of luggage which we noted in *Hamilton*, as expressed in *Chadwick*, was recently reaffirmed by the Supreme Court in *Arkansas v. Sanders*. In our opinion in *Hamilton* we noted that the defendant, to the best of his ability, sought to safeguard his expectation of privacy in his briefcase. In the case before us, the defendant also sought to protect his expectation of privacy by his request that the witness, Carlock, close the luggage. In considering the validity of an inventory search, the high privacy interest in the luggage must be balanced against the three objectives as enunciated in *Opperman*. One objective, and a possible justification for an inventory search as noted in *Hamilton*, the protection of the police from danger, is clearly not presented by the facts of this case. Neither the sheriff nor his deputy contended that they feared for their safety. We find that the fulfillment of the other two objectives, that is, the preservation of defendant's property and the protection of the police from claims of lost or stolen property, could have been achieved in a less intrusive manner. As we noted in *Hamilton*, these two objectives could have been fulfilled by sealing the suitcase with tape and placing it in a locked locker or a storage room. Thus there were no circumstances present in this case that would justify a warrantless invasion of the defendant's expectation of privacy.

By finding this inventory to be invalid, we do not mean to hold that all warrantless openings of closed containers during the course of an inventory search are invalid. Certain exigent circumstances, such as danger to the officers or the destruction or mobility of the evidence, may justify the opening of such containers. We are unpersuaded, however, that any such exigencies were present in this case. The fact that the items were found following a serious automobile accident does not serve to increase the mobility of the item, the danger presented to the police, or the defendant's ability to destroy the evidence. Also, we

do not view defendant's expression of concern over the items of value and the discovery of the $1,255 as justification for the opening of the suitcase. As hereinbefore stated, valuable property could have been adequately safeguarded by keeping the container intact.

In conclusion, we find the inventory search invalid. We therefore hold that the search of the suitcase was unreasonable under the fourth amendment and that the evidence should have been suppressed. Accordingly, we affirm the judgment of the appellate court reversing defendant's conviction.

*Judgment affirmed.*

MR. JUSTICE WARD, dissenting:

The deputy testified before the trial court, which denied the defendant's motion to suppress, that the suitcase "was probably a half an inch or three-quarters of an inch from being closed." The deputy knew that $1,255 in bills had been found in and around the overturned vehicle and he knew that the defendant had said that there was something valuable in the suitcase that he wanted "taken care of." The deputy testified that "the sheriff has always told us that on any wreck or tow-in that we have, that we have to make an inventory of all of the personal property, the items in any vehicle, to protect us and to protect them so that we know what's there."

The majority, it seems to me, takes a severely and unjustifiably restrictive view of what was held in *South Dakota v. Opperman* (1976), 428 U.S. 364, 49 L. Ed. 2d 1000, 96 S. Ct. 3092, and I consider that the trial court correctly held that the deputy did not act unreasonably in fully opening the suitcase.

MR. JUSTICE UNDERWOOD joins in this dissent.