(No. 54507.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant,
v. CINDY HELM, Appellee.

*Opinion filed December 18, 1981.*

WARD, UNDERWOOD, and MORAN, JJ., dissenting.

Tyrone C. Fahner, Attorney General, of Springfield, and Basil Greanias, State's Attorney, of Decatur (Robert J. Biderman and Debra A. Buchman, of the State's Attorneys Appellate Service Commission, of Springfield, of counsel), for the People.

Baird, Latendresse, McCarthy & Rowden, of Decatur (Lloyd F. Latendresse, of counsel), for appellee.

JUSTICE SIMON delivered the opinion of the court:

Decatur police arrested the defendant, Cindy Helm, at her home at 3 a.m. on a battery charge filed by her ex-husband. He claimed she had hit him in the eye with her fist. The defendant was in bed when police arrived, and when told that she would have to go to the station, Helm dressed, picked up her purse, and accompanied the officers to the station. There, a female desk clerk took her purse and searched it. The clerk, who was not a police officer, found three small diet pills in Helm's coin pouch, which was inside the purse. The defendant was not personally searched, either at her home or at the station, until after her purse was searched. Later lab tests showed that the pills were amphetamines, and Helm was charged with

felony possession of a controlled substance. (Ill. Rev. Stat. 1979, ch. 56½, par. 1402(b)). The circuit court of Macon County granted her motion to suppress the pills. The appellate court, in an unpublished order (73 Ill. 2d R. 23), affirmed (89 Ill. App. 3d 1206), and this court granted leave to appeal under Rule 315 (73 Ill. 2d R. 315).

The search of the defendant's purse was made without a warrant and so was banned by both the fourth amendment to the Federal Constitution and section 6 of the Illinois bill of rights (Ill. Const. 1970, art. I, sec. 6) unless it was both reasonable and within one of the exceptions to the warrant requirement. *Arkansas v. Sanders* (1979), 442 U.S. 753, 759-60, 61 L. Ed. 2d 235, 242, 99 S. Ct. 2586, 2590-91.

Helm did not consent to the search. (*Cf. People v. Nunn* (1973), 55 Ill. 2d 344, 347.) And, her purse was not being searched under the authority of the "stop and frisk" statute (Ill. Rev. Stat. 1979, ch. 38, par. 108—1.01), for the arresting officers could not reasonably have suspected by the time they reached the station that they were in danger of attack from Helm.

Nor were the terms of section 108—1 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1979, ch. 38, par. 108—1) for a search incident to an arrest fulfilled. The purse was not searched to protect the officers from attack, for if that were in fact the rationale, the officers would not have waited to search Helm until after arriving at the police station. They would instead have searched her on the spot of the arrest or would have patted her down in a weapons frisk upon arriving at the station. The purse was not searched to prevent Helm from escaping or passing on its contents to other persons. The purse was being taken away from her and its contents would never go with her into the jail, and so could not be contraband which might fall into the hands of other prisoners or pose a threat to jail security. It was not searched to discover the fruits of

Helm's crime—battery, which has no seizable fruits. It was not searched to discover instruments used in the commission of her crime, for she had used only her fist. Because the purse was being taken away from Helm, it was outside the area of immediate control in which a search incident to an arrest is justified. (*Cf. New York v. Belton* (1981), 453 U.S. 454, 462-63, 69 L. Ed. 2d 768, 776, 101 S. Ct. 2860, 2865; *United States v. Robinson* (1973), 414 U.S. 218, 38 L. Ed. 2d 427, 94 S. Ct. 467.) The pills, secreted in the coin pouch which was inside the purse, were not in "plain view." *Cf. Chimel v. California* (1969), 395 U.S. 752, 23 L. Ed. 2d 685, 89 S. Ct. 2034.

The State seeks to justify the search as an attempt to inventory Helm's possessions incident to a lawful custodial arrest. The normal procedure in the Decatur police station was for the desk clerk to put an arrestee's belongings in a locked strong box under the counter after they were inventoried. They were kept there until the arrestee was released. A police officer here testified that he had read an inventory slip prepared by the desk clerk pursuant to the search of Helm's purse, but no inventory slip was presented into evidence or appears in the record.

Inventory searches are recognized by statute (Ill. Rev. Stat. 1979, ch. 38, par. 108—2), but are different from other searches exempted from the warrant requirement. The inventory search is not justified by law-enforcement exigencies which threaten the safety of police or make resort to a judge for a warrant impracticable. Instead, an inventory search is made to protect the arrestee's property by putting it in safekeeping while the arrestee is being booked or incarcerated and to insulate the police from later claims by arrestees that their property was stolen or mishandled while in police custody. *People v. Bayles* (1980), 82 Ill. 2d 128; *People v. Hamilton* (1979), 74 Ill. 2d 457, 469.

In *Bayles,* the defendant was trapped under his car

after a one-car accident. His luggage was strewn about a nearby field, and a sheriff's deputy inventoried a suitcase and found marijuana. The inventory search was held invalid because the objectives of the inventory could have been achieved in a less intrusive manner. (82 Ill. 2d 128, 143.) In *Hamilton,* the defendant had been injured in an automobile accident and was taken to a hospital. The State trooper investigating the accident found the defendant's briefcase on the scene and took it with him to the hospital, where he was going to interview the defendant for his accident report. The defendant was not under arrest. The trooper searched the briefcase while inventorying its contents and found heroin. The drugs were suppressed, the court noting that the purposes of the inventory search could have been served by placing the briefcase in a locked locker or storage room, to protect the defendant's goods, and by sealing it with tape in the presence of a third party, to guard against later claims of theft. (74 Ill. 2d 457, 471-72.) The court found no reasonable justification for searching the briefcase.

Likewise there was no reasonable justification here. That Helm was under arrest makes no difference; as already noted this was not a search incident to arrest under section 108—1 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1979, ch. 38, par. 108—1). The police station to which Helm was taken had a locked strongbox which was immediately available for storage to protect her belongings; witnesses (the arresting police officers) were present and could have verified a sealing of the purse by the desk clerk without examination of its contents, as suggested in *Hamilton.* In view of the availability of the strongbox and the minor nature of the charge against Helm, this is the procedure which should have been followed here. Had it been, it would have accomplished everything the inventory of the contents did. One commentator has even pointed out that taking inventory item-

by-item does not afford protection against false claims that property was stolen while in police custody.

"False claims cannot be avoided, and seem more likely when the contents are handled and inventoried (a time when, the owner might later claim, some of his property was taken), as compared to when the container is immediately sealed." 2 W. LaFave, Search and Seizure sec. 5.5, at 360 n.50 (1978).

Under the circumstances presented in this case, the purposes of the inventory could easily have been accomplished in a less intrusive way; having the desk clerk, instead, rummage through Helm's purse was under these circumstances an impermissible search.

Because the warrantless search here did not reasonably fall under an exception to the warrant requirement, the pills were properly suppressed and the judgment must be affirmed. The conclusion we reach makes it unnecessary to address Helm's contention that the pills were correctly suppressed because she was not informed she had a right to post bail in the amount pre-set for a charge of battery under Rule 528(c) (73 Ill. 2d R. 528(c)). See generally *People v. Seymour* (1979), 80 Ill. App. 3d 221, *rev'd* (1981), 84 Ill. 2d 24.

*Judgment affirmed.*

JUSTICE WARD, dissenting:

I must dissent from the majority's holding, which I consider shows a misunderstanding of the important question involved here and which unrealistically interferes with booking procedures for persons under custodial arrest at police stations. The majority, in holding the drugs in the purse to have been illegally seized, says that a station inventory could be accomplished in a less intrusive way. That statement gratuitously and erroneously assumes that the search of the purse here was not to be considered

as a part of the search of the person and of the inventory process. Too, our inquiry should be whether inventorying the contents of the purse was unreasonable as a matter of law and therefore unconstitutional. The question is not whether a search could be less intrusive. Talk of less intrusive inventory station searches following arrest has been advanced but not accepted. Professor LaFave in his treatise notes that it has been sometimes suggested that the purposes of an inventory could be accomplished by a less intrusive means, but he states: "Currently, such evidence is admissible, and this is generally so even when the inventory has been most thorough. It is customary for the booking inventory to involve an item-by-item examination of everything in the arrestee's pockets or otherwise on his person, including looking into his wallet or into containers on the person; it may even extend to a strip search." (2 W. LaFave, Search and Seizure sec. 5.3, at 307 (1978).) (I would observe that we, excepting Justice Simon, who did not participate, very recently held that strip searches at the police station may be reasonable. Following holdings of the Supreme Court, we held that a full search of a person incident to a lawful custodial search may be made without a warrant and that it may be made even if there is not probable cause to believe that the suspect may have a weapon or destroy evidence. *People v. Seymour* (1981), 84 Ill. 2d 24.)

If we were interested only in reducing the intrusiveness of inventory searches, while barring weapons and contraband from the interior of the jail, the practice of having persons under arrest empty pockets, turn over wallets and the like for purposes of inventory could be abolished. Instead pants, coats and other clothing and property could be sealed in garment bags and jail clothing provided. Pockets and wallets may contain possessions that are as private in character as possessions found in purses. The absurdity, however, of such a procedure is reflected in the

practical comment of the court in *People v. Walker* (1975), 58 Mich. App. 519, 525, 228 N.W.2d 443, 446: "It would be naive and pointless to assume that law enforcement officials may store an arrestee's personal effects without first determining what it is they are inventorying."

I suspect that police and other law-enforcement officers will judge that the majority's holding discloses an innocence of situations that police encounter on an everyday basis. The court in *United States v. Berry* (7th Cir. 1977), 560 F.2d 861, 864, made the common sense observation that a purse "might be characterized as 'immediately associated with the person of the arrestee' ***." Who is able to say what a purse of one under arrest may contain? "Growing Up Underground," an autobiographical reminiscence of Jane Alpert, who was described as a woman radical of the 1960's, was reviewed in December 1981 in a Chicago newspaper. A portion of the review reads: "Several weeks later, as Alpert transported a purse full of dynamite to the New York City Federal Building, she felt, 'as I imagined I would on my wedding day.' " In October 1981, in New York, a gun battle followed a robbery attempt on an armored truck. Two police officers and a security guard were murdered. Two women members of the so-called radical underground were among those arrested at the time. The public and police would be astonished to find that the search of the women's purses incident to their arrest or when making an inventory at their booking at the police station might be held an unreasonable search and any evidence seized declared to be inadmissible.

The Supreme Court has made it clear that a full search of a person is authorized upon a custodial arrest. In *United States v. Robinson* (1973), 414 U.S. 218, 235, 38 L. Ed. 2d 427, 440-41, 94 S. Ct. 467, 477, the court stated: "A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that

intrusion being lawful, a search incident to the arrest requires no additional justification. It is the fact of the lawful arrest which establishes the authority to search, and we hold that in the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a 'reasonable' search under that Amendment." In *United States v. Edwards* (1974), 415 U.S. 800, 803, 39 L. Ed. 2d 771, 775, 94 S. Ct. 1234, 1237, the court said that "searches and seizures that could be made on the spot at the time of arrest may legally be conducted later *** at the place of detention." (See also 2 W. LaFave, Search and Seizure sec. 5.3 (1978).) When the arrested person has been taken to the place of the detention, there may be a search of his person without warrant, and no justification for the individual search is necessary other than that the person was lawfully arrested and is being lawfully detained. Such searches are conducted as searches incident to the arrest, as the taking of an inventory to protect the property of the arrestee, to insure the security of the place of detention and its occupants, and to protect police officers from false claims of appropriating property of the arrestee. (See 2 W. LaFave, Search and Seizure sec. 5.3 (1978).) A purse may be searched in the course of a search under authority of *Robinson* and *Edwards.* The court in *United States v. Berry* (7th Cir. 1977), 560 F.2d 861, 864, noted that a purse "might be characterized as 'immediately associated with the person of the arrestee' because it is carried with a person at all times." *United States v. Chadwick* (1977), 433 U.S. 1, 53 L. Ed. 2d 538, 97 S. Ct. 2476, does not restrict the force of *Robinson* and *Edwards* here. There it was held that the opening of a footlocker following the arrest of the defendants without a search warrant was improper. The court said, "Once law enforcement officers have reduced luggage or other personal property *not immediately associated with the person*

of the arrestee to their exclusive control *** a search of that property is no longer an incident of the arrest." (Emphasis added.) (433 U.S. 1, 15, 53 L. Ed. 2d 538, 551, 97 S. Ct. 2476, 2485.) As we noted in *United States v. Berry*, it was said in discussing *Chadwick* that a purse may be characterized as being immediately associated with the person of the arrestee. A footlocker certainly is not immediately associated with the person and unlike a purse is not carried with a person at all times. Too, and importantly, in *Chadwick* the justification claimed for the search was that it was incident to the arrest. Here, the search of the defendant and her purse were part of an inventory process at the police station.

In *State v. Sabater* (1979), 3 Kan. App. 2d 692, 601 P.2d 11, the court held that a woman's pocketbook is immediately associated with the person and the search of the pocketbook and wallet incident to her arrest was a lawful search. The court rejected the defendant's contention that the search was improper under *Chadwick*. The court said: "The custodial arrest of defendant was a seizure of her person. The search of her pocketbook and wallet was lawful. *United States v. Robinson* (1973), 414 U.S. 218, 38 L. Ed. 2d 427, 94 S. Ct. 467. We do not view defendant's pocketbook to have been a repository of personal property coming within the rule enunciated in *Chadwick* ***. We hold defendant's pocketbook was immediately associated with the person of defendant, the arrestee, and the search of the pocketbook involved no greater reduction in her expectations of privacy than that caused by the arrest itself. Accord, *Dawson v. State,* 40 Md. App. 640, 395 A.2d 160, 164-67 (1978)." (3 Kan. App. 2d 692, 694, 601 P.2d 11, 13-14.) LaFave observes that in *Dawson v. State* the court adopted the reasoning of *United States v. Berry* (7th Cir. 1977), 560 F.2d 861. (2 W. LaFave, Search and Seizure sec. 5.5 (1978).) Other decisions upholding searches of purses

44

even on incident-to-arrest grounds (as opposed to the inventory basis) include *Daigger v. State* (1980), 268 Ark. 249, 595 S.W.2d 653, and *Sumlin v. State* (1979), 266 Ark. 697, 587 S.W.2d 571.

The majority's citation of *People v. Bayles* (1980), 82 Ill. 2d 128, and *People v. Hamilton* (1979), 74 Ill. 2d 457, simply misses the mark. What the appellate court in *People v. Keath* (1981), 101 Ill. App. 3d 652, 660, said of these decisions is particularly applicable here:

> "Suffice to say that search in each case was not associated with searches of the person upon custodial arrest, or incident to booking for purposes of custodial detention. Those cases [*Hamilton, Bayles*] were concerned solely with the inventory of baggage obtained following motor accidents."

In *Keath* the court, after an impressively reasoned discussion of the search question, held that drugs, found in a key case and cellophane bag in the defendant's pockets during a routine inventory search at the jail, where the defendant's property was to be stored in a locker, were admissible in evidence.

Though the record is not revealing in this regard, it is not inappropriate to observe that the case here may be of the sad type in which police are called by a friend or relative for the protection and welfare of the defendant. The defendant's former husband complained to the police that the defendant had struck him with her fist. That the police would go to the defendant's home at three o'clock in the morning and take her into custody would be remarkable if it were not for the purpose of seeking to protect the defendant possibly from the drugs she apparently routinely carried with her.

I respectfully submit that the majority has misapprehended and erred.

UNDERWOOD and MORAN, JJ., join in this dissent.