**William Ward WOOLDRIDGE, Jr., Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 04–83–00377–CR.**

Court of Appeals of Texas, San Antonio.

Aug. 7, 1985.

Michael D. Bowles, San Antonio, for appellant.

Sam D. Millsap, Jr., Sid Harle, Edward Shaughnessy, III, Criminal Dist. Attys., San Antonio, for appellee.

Before ESQUIVEL, CANTU and DIAL, JJ.

CANTU, Justice.

Appellant was convicted of the offense of aggravated possession of hashish. Punishment was assessed at imprisonment in the Texas Department of Corrections for a term of five years, and a $500.00 fine.

We previously affirmed appellant's conviction in an unpublished opinion delivered October 24, 1984. *Woolridge v. State,* No. 04–83–00377–CR (Tex.App.—San Antonio 1985).

The Court of Criminal Appeals summarily granted appellant's petition for discretionary review, reversed the judgment of this court and remanded the cause for consideration of appellant's search and seizure challenge of the trial court's ruling on his motion to suppress. *See Morgan v. State,* 688 S.W.2d 504 (Tex.Crim.App.1985) and *Ex parte Grant,* 687 S.W.2d 6 (Tex.Crim. App.1985).

We now address that challenge.

Appellant's motion to suppress sought to prevent the introduction in evidence of a closed vinyl case containing hashish seized from appellant's car following an automobile inventory conducted by police. The motion alleged violations of the fourth and fourteenth amendments to the United States Constitution.

The evidence developed at the motion to suppress hearing reflects that on May 1, 1983, at approximately 2:30 A.M., appellant was alone driving north on Interstate Highway 35 through the City of Live Oak in northern Bexar County.

About that time police officer Joseph Aguilera of the Live Oak Police Department was investigating a possible driving while intoxicated violation on the north bound lane of IH35. As he waited for a wrecker, officer Aquilera observed a vehicle smash through a construction barricade, drive in front of a vehicle onto the grassy median, spin down to the interstate and flee north on IH35.

The officer accompanying Aguilera remained at the scene with the prior suspect as Aguilera pursued the fleeing vehicle. The chase proceeded on northbound IH35 at speeds exceeding seventy five miles per hour with the fleeing car swaying from lane to lane.

After the fleeing vehicle came to a stop a lone male occupant stepped out of the vehicle in an excited manner and swaying as he attempted to put his shirt on. The suspect, later identified as appellant, walked back towards officer Aguilera's vehicle using his car to support himself.

Aguilera described appellant as possessing blood shot eyes with a confused state of speech, an inability to stand and moderate to heavy smell of intoxicants. From the foregoing characteristics and the use of loud profane language, Aguilera concluded that appellant was intoxicated.

Appellant was placed under arrest for driving while intoxicated, handcuffed and placed in the back seat of Aguilera's patrol car. About that time fellow officer John Stakes arrived at the location and pulled up behind Aguilera's car. Aguilera called for a wrecker to pick up appellant's vehicle. While Aguilera transported appellant and the earlier suspect to the Live Oak Police Station, officer Stakes remained at the stop scene awaiting the arrival of the wrecker. Pursuant to departmental policy [1] and at Aguilera's request he then conducted an inventory search of appellant's vehicle there at the scene of the stop.

On the back seat of appellant's car, in plain view, was a brown case resembling an eight track or cassette tape case. The case was closed but unlocked. Pursuant to departmental policy officer Stakes opened up the case to check for valuables. Inside the case was found a large set of scales, a bag containing a small wooden pipe and a plastic vial with substance the officer thought to be hashish. Also in the case was a bag containing several empty plastic bottles and another bag containing a folded cloth.

Officer Stakes took the case into his custody and returned it to the Live Oak Police Station. There a field test was conducted on the suspected hashish and the results were positive for the substance.

No effort was ever made to obtain a search warrant prior to opening the case.

Appellant did not testify nor did he offer any evidence at the hearing.

---

1. Departmental policy required all vehicles left immobilized following an arrest to be towed to the police pound and further required an inventory of the vehicle's contents prior to towing from the scene to protect all parties from claims of damage or loss of personal property. Departmental policy did not permit the opening of locked containers.

Appellant relies on numerous cases involving searches incident to arrest or searches upon probable cause, *i.e., Robbins v. California,* 453 U.S. 420, 101 S.Ct. 2841, 69 L.Ed.2d 744 (1981); *New York v. Belton,* 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981); *United States v. Robinson,* 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973); *Chambers v. Maroney,* 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); *see also United States v. Johns,* 469 U.S. ——, 105 S.Ct. 881, 83 L.Ed.2d 890 (1985); *Florida v. Meyers,* 466 U.S. 380, 104 S.Ct. 1852, 80 L.Ed.2d 381 (1984); *Michigan v. Thomas,* 458 U.S. 259, 102 S.Ct. 3079, 73 L.Ed.2d 750 (1982).

He further places much reliance on Justice Powell's concurring opinion in *South Dakota v. Opperman,* 428 U.S. 364, 377, 96 S.Ct. 3092, 3101, 49 L.Ed.2d 1000, 1009 (1976), wherein he suggests that closed containers found within the vehicle should be removed for storage without examination of their contents.

We believe the instant case falls squarely within the holding in *South Dakota v. Opperman, supra.*

Therein the Supreme Court of the United States recognized the constitutional validity of inventory searches. In doing so, the Court held that such searches are reasonable if conducted in accordance with standardized police procedures. The Court recognized three distinct purposes for inventory searches: (1) the protection of personal property which may be in the vehicle, (2) the protection of the police against claims arising from property allegedly lost or stolen while the automobile was in police custody, and (3) the protection of the police from possible unforeseen dangers contained within the automobile.

Texas case law recognizes and applies the concept of inventory searches as an exception to searches conducted incident to arrest or upon probable cause. *See Backer v. State,* 656 S.W.2d 463 (Tex.Crim.App. 1983); *Gary v. State,* 647 S.W.2d 646 (Tex. Crim.App.1983); *Daniels v. State,* 600 S.W.2d 813 (Tex.Crim.App.1980); *Benavides v. State,* 600 S.W.2d 809 (Tex.Crim. App.1980).

Thus an inventory search draws its validity from the officer's caretaking duty of an automobile which otherwise might remain unattended in a public place. Once the appellant was arrested, the administrative caretaking function arose. *Evers v. State,* 576 S.W.2d 46 (Tex.Crim.App.1978).

The question remains as to whether or not the closed but unlocked container should have been inventoried as a sealed unit or opened and inventoried as was done in the instant case. Many courts have taken varied views of the matter[2] but we believe that the issue was recently resolved in favor of the procedure taken in the instant case when the Supreme Court of the United States stated:

> We are hardly in a position to second-guess police departments as to what practical administrative method will best deter theft by and false claims against its employees and preserve the security of the station house. It is evident that a station house search of every item carried on or by a person who has lawfully been taken into custody by the police will amply serve the important and legitimate governmental interests involved.
>
> Even if less intrusive means existed of protecting some particular types of property, it would be unreasonable to expect police officers in the every day course of business to make fine and subtle distinctions in deciding which containers or

---

**2.** (Opening of containers permissible) *People v. Guy,* 118 Mich.App. 99, 324 N.W.2d 547 (1982); *State v. Levesque,* 123 N.H. 52, 455 A.2d 1045 (1983); *State v. Beaucage,* 424 A.2d 642 (R.I.1981); *State v. Crabtree,* 618 P.2d 484 (Utah 1980); *Hamby v. Commonwealth,* 222 Va. 257, 279 S.E.2d 163 (1981); (Opening of containers not permitted) *United States v. Monclavo-Cruz,* 662 F.2d 1285 (9th Cir.1981); *United States v.* *Schleis,* 582 F.2d 1166 (8th Cir.1978); *People v. Helm,* 89 Ill.2d 34, 59 Ill.Dec. 276, 431 N.E.2d 1033 (1981); *People v. Bayles,* 82 Ill.2d 128, 44 Ill.Dec. 880, 411 N.E.2d 1346 (1980), *cert. denied,* 453 U.S. 923, 101 S.Ct. 3160, 69 L.Ed.2d 1005 (1981); *Bradford v. State,* 401 N.E.2d 77 (Ind.App.1980); *State v. Pace,* 171 N.J.Super. 240, 408 A.2d 808 (1979); *Cf. Stewart v. State,* 611 S.W.2d 434 (Tex.Crim.App.1981).

items may be searched and which must be sealed as a unit. *Illinois v. Lafayette,* 462 U.S. 640, 103 S.Ct. 2605, 77 L.Ed.2d 65 (1983).

■ The record clearly reflects that the inventory was conducted pursuant to standard practice of the Live Oak Police Department. We hold that the inventory of the contents of a closed but unlocked container pursuant to an established standardized procedure was a reasonable search and does not offend the fourth amendment to the U.S. Constitution.

For the first time on appeal, appellant invokes the protection of the State Constitution. *See* TEX. CONST. art. I, § 9.

■ An appellant may not, for the first time on appeal, urge error not raised at trial. The error presented on appeal must be the same as the objection raised before the trial court. At trial appellant sought only that protection provided by federal law. There was no objection invoking the laws of this State, therefore, that assigned error is not before this court for review. *Nelson v. State,* 607 S.W.2d 554 (Tex.Crim.App.1980).

Appellant's sole ground of error is overruled. The judgment of the trial court is affirmed.