THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* HELBERT HUGHES, Defendant-Appellant.

Third District    No. 81-404

Opinion filed March 31, 1982.

HEIPLE, J., specially concurring.

Robert Agostinelli and Peter A. Carusona, both of State Appellate Defender's Office, of Ottawa, for appellant.

John A. Barra, State's Attorney, of Peoria (John X. Breslin and Terry A. Mertel, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

PRESIDING JUSTICE SCOTT delivered the opinion of the court:

This appeal is brought by the defendant, Helbert Hughes, from his conviction following a jury trial in Peoria County of the unlawful possession of less than 30 grams of a controlled substance, a Class 4 felony. (Ill. Rev. Stat. 1979, ch. 56½, par. 1402(b).) The defendant was sentenced to two years' probation.

Prior to trial, the defendant filed a motion to suppress two grams of cocaine found in small cardboard packages contained within his wallet. At the hearing held on the defendant's motion, the following facts were established by stipulation. On December 22, 1980, the defendant was lawfully arrested by Officer Norman Green on outstanding warrants in Livingston County and was brought to the Peoria Police Department where his personal property, including his wallet, was taken. The defendant's wallet was opened and its contents, including two small white cardboard packages, were removed. Each package had a picture of a seal with the name "sno seals" on the cover. The record indicates that Officer Green assumed that the packages contained prophylactics. The defendant's personal belongings were then placed in a paper bag and the bag was placed in an unlocked security locker. Later in the day the defendant was transported to the county jail, but his belongings remained in the locker at the police station. The following morning Officer Green realized his error and transported the bag containing the defendant's belongings to the county jail.

County jailer Depperman asked Officer Green to empty the contents of the bag on a desk at the county jail. Depperman examined the items and opened one of the small cardboard packages. Officer Green then

asked Depperman to open the other package. Both packages contained a powder-like substance, which, by stipulation was identified to be cocaine.

At the conclusion of the suppression hearing, the trial judge denied the defendant's motion to suppress, reasoning that a detailed search of items seized pursuant to a lawful arrest could take place at any time, and that there was no legitimate expectation of privacy in any package that was legally seized.

It is from the denial of his suppression motion that the defendant brings the instant appeal. The defendant contends that his fourth and fourteenth amendment rights were violated when his wallet and the cardboard containers found therein were searched. He asserts that he had a reasonable expectation of privacy in his wallet and the two cardboard packages and further contends that the State failed to establish any exception to the warrant requirement. The State argues that the search was valid as a delayed search incident to the defendant's arrest or as a valid inventory search. Neither party disputes the lawfulness of the defendant's arrest, nor does the State specifically challenge the defendant's assertion that he had a reasonable expectation of privacy in the contents of his wallet and items found therein.

Searches of arrestees and of their personal property during post-arrest detention have been the subject of a considerable body of case law in recent years. In *United States v. Edwards* (1974), 415 U.S. 800, 39 L. Ed. 2d 771, 94 S. Ct. 1234, the United States Supreme Court held that a search incident to arrest, if lawful at the time of the arrest, may be conducted later when the accused arrives at the place of detention. In *Edwards*, the defendant was lawfully arrested and a search was conducted at the police station. The next day, without a warrant, the defendant's clothes were taken from him and evidence was discovered on that clothing. In upholding the search, the Supreme Court noted that the search was a normal incident of an arrest, and that a reasonable delay in effectuating the search did not change the fact that the defendant was no more imposed upon than he would have been at the time and place of his arrest or immediately after his arrival at the place of detention.

The *Edwards* case was consistent with the principle announced by the Supreme Court one year earlier in *United States v. Robinson* (1973), 414 U.S. 218, 38 L. Ed. 2d 427, 94 S. Ct. 467. In *Robinson*, heroin discovered in a cigarette container taken from the defendant during a custodial arrest was held admissible. In so holding, the Supreme Court announced that in cases of lawful custodial arrests, a full search of the person is not only an exception to the warrant requirement of the fourth amendment but is also a reasonable search under that amendment.

Subsequent to the *Robinson* and *Edwards* decisions, courts have generally recognized that anything on the person is fair game for a search

incident to a lawful arrest. Thus, courts have upheld searches through containers on the person: *United States v. Jeffers* (7th Cir. 1975), 524 F.2d 253 (a purse); and through the arrestee's pockets: *McCoy v. State* (Alas. 1971), 491 P.2d 127 (may also search wrapped packet found in the pocket). Of most significance for the case at bar, searches through the arrestee's wallet have been upheld: *United States v. Basurto* (9th Cir. 1974), 497 F.2d 781 (may also scrutinize documents found therein); *State v. Dubay* (Me. 1974), 313 A.2d 908 (a crushed LSD tablet found in a ball of tinfoil in the defendant's wallet was admissible); and *State v. McElroy* (1972), 189 Neb. 376, 202 N.W.2d 752 (cocaine discovered in a folded, opaque newspaper measuring 1½ by 2 inches and found in the defendant's wallet was admissible).

In 1977, the United States Supreme Court limited the option of postponing a search incident to arrest by sanctioning only delayed searches of the person of the accused and of personal property discovered as a result of a search of the person. (*United States v. Chadwick* (1977), 433 U.S. 1, 53 L. Ed. 2d 538, 97 S. Ct. 2476.) Prohibited by *Chadwick* are searches of "* * * personal property not immediately associated with the person of the arrestee * * *" (*United States v. Chadwick* (1977), 433 U.S. 1, 15, 53 L. Ed. 2d 538, 551, 97 S. Ct. 2476, 2485). A search of a locked footlocker found adjacent to the lawfully arrested defendants conducted at the stationhouse and without a warrant subsequent to the defendants' arrest was held unlawful in *Chadwick*. Subsequent case law has applied the Chadwick rule to various types of containers, whether locked or unlocked. The test is whether, judging from the totality of circumstances, the accused has a reasonable expectation of privacy in the container. For examples of impermissible searches, see, *e.g.*, *Robbins v. California* (1981), ___ U.S. ___, 69 L. Ed. 2d 744, 101 S. Ct. 2841 (closed opaque plastic bag); *United States v. Rigales* (5th Cir. 1980), 630 F.2d 364 (closed backpack); *People v. Bayles* (1980), 82 Ill. 2d 128, 411 N.E.2d 1346 (unopened suitcase); and *Arkansas v. Sanders* (1979), 442 U.S. 753, 61 L. Ed. 2d 235, 99 S. Ct. 2586 (unlocked suitcase).

In recent opinions from the Illinois Supreme Court (*People v. Helm* (1981), 89 Ill. 2d 34), and from this court (*People v. Lafayette* (1981), 99 Ill. App. 3d 830, 425 N.E.2d 1383), the *Chadwick* rule was applied to hold unlawful the postponed warrantless search of the defendant's purse and shoulder bag, respectively. Because the searches in *Helm* and *Lafayette* could not be justified as properly incident to a lawful arrest or as valid inventory searches of the defendant's belongings, they were held to have violated the fourth amendment.

■■ Applying the principles found in this body of case law to the facts of the case at bar, we find that the defendant's wallet is the type of object subject to a search, whether incident to his arrest or justified as an in-

ventory search. This is so despite the absence of any clear indication in the record that the defendant's wallet was found on his person. We note that there is nothing to rebut the obvious presumption that the wallet was found on the defendant's person, since he carried no type of shoulder bag or other container.

■■ Having determined that the defendant's wallet was subject to search following his arrest, we next address the question of whether the two packages contained in the wallet were lawfully opened. Relying on *United States v. Jeffers* (7th Cir. 1975), 524 F.2d 253, *United States v. Basurto* (9th Cir. 1974), 497 F.2d 781, and other case law applying the *Chadwick* rule to searches of closed containers found on the defendant's person and to the opening of packages found within those containers, we hold that the two cardboard packages in the instant case could lawfully have been opened at the time of their first discovery.

■■ Our final task must be to determine the legality of the timing of the search. The defendant's wallet was searched at the Peoria Police Department subsequent to his arrest, and the two cardboard packages were removed. These items plus other personal belongings of the defendant were put into a paper bag, which was then placed in an unlocked security locker. The next day, the defendant's belongings were taken to the county jail. There, both cardboard packages were opened. Was this "second look" permissible? Based on our recent decision in *People v. Richards* (1981), 103 Ill. App. 3d 1120 we hold that it was not. In *Richards*, this court held unlawful a second look search of a necklace found in the defendant's clothing pursuant to a lawful inventory search on the basis that the second search was not justifiable as either a delayed search incident to arrest or as an inventory search and was thus a violation of the defendant's fourth amendment rights.

In the case at bar, the search of the defendant's wallet following his arrest was clearly lawful. Had the packages found in his wallet been opened at the time of their initial discovery, the cocaine found in them would have been admissible. It is the delay in searching the packages which renders the cocaine discovered in them inadmissible.

For the foregoing reasons, we reverse the judgment of the circuit court of Peoria County.

Reversed.

STOUDER, J., concurs.

JUSTICE HEIPLE, specially concurring:

On December 22, 1980, Helbert Hughes was arrested by a Peoria policeman on outstanding Livingston County warrants for forgery and

deceptive practices. Defendant was allowed to drive his car home and park it. He was transported to the Peoria police station. Escorted to an interview room, he was thoroughly searched. Mr. Hughes was told to empty the contents of his pockets and drop his pants. Defendant complied, placing his wallet and other personal effects on a table. Officer Green searched the wallet. Inside he found two small cartons labelled "sno-seals." These were presumed to be prophylactics and not opened. The wallet and its contents and other personal effects were put in a property envelope and taken to the police evidence locker. After Mr. Hughes was transferred from the city lockup to the county jail this property envelope was inventoried by Mr. Depperman, a jailer. He looked in the two previously unopened cartons and found cocaine.

Defendant's motion to suppress the seized contraband was denied. The majority says this was wrong. They so conclude because they believe that the *second search* by Mr. Depperman was illegal since conducted without a warrant and because it was unreasonable. *People v. Richards* (1981), 103 Ill. App. 3d 1120.

This is a rationale that fails to see the forest for the trees. It was the *first search* of the wallet in this case that was illegal. If the first search was illegal, then, of course, it would follow that the second search was correspondingly illegal since it followed from an illegal first search. The majority opinion, however, says that the first search was perfectly all right but that it was wrong to take a second look. I disagree, but more on this later.

As fourth amendment law has evolved, so have limitations to the general rule which prohibits warrantless police searches. One such exception permits a police officer to conduct a search of a man arrested for a felony. Thus, in *United States v. Robinson* (1973), 414 U.S. 218, 235, 38 L. Ed. 2d 427, 441, 94 S. Ct. 467, 477, the United States Supreme Court stated:

> "* * * in the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a 'reasonable' search under that Amendment."

This language being quite broad, it was assumed to give police a wide berth in conducting a search incident to a custodial arrest. In *United States v. Chadwick* (1977), 433 U.S. 1, 53 L. Ed. 2d 538, 97 S. Ct. 2476, however, it was indicated that the search incident to arrest theory is much more limited than the *Robinson* rule declared. In *Chadwick* several defendants, while under police surveillance for drug trafficking, placed a footlocker in a car trunk. They were arrested, the footlocker seized, and both defendants and footlocker were transported to a Federal building where defendants were detained. An hour and one-half later, the foot-

locker was opened and searched without a warrant. The Supreme Court struck down the search as incidental to the arrest. In so doing it held that no exigency existed; that the footlocker was in the police's exclusive control; that no danger was presented to the police; and that the luggage was not immediately associated with the arrestees' persons. In short, *Chadwick* tempered the broad language of *Robinson* where a closed container is concerned. See 2 LaFave, Search and Seizure §5.5, at 347-54 (1978).

In light of *Chadwick* and the discussion which follows, the search incident exception is not *per se* reasonable under the fourth amendment even if in the custodial context. The necessity of a warrantless search must be gauged by balancing the interests of law enforcement and the individual's expectation of privacy in the article examined. In this cause, the latter interest predominates.

A warrantless search of a container normally used to carry one's personal effects such as notes or papers violates the fourth amendment of the Federal constitution unless the search falls within an established exception to the warrant requirement.[1] (*Arkansas v. Sanders* (1979), 442 U.S. 753, 763, 61 L. Ed. 2d 235, 244, 99 S. Ct. 2586, 2592-93.) Various containers such as a backpack (*United States v. Rigales* (5th Cir. 1980), 630 F.2d 364), a suitcase (*People v. Bayles* (1980), 82 Ill. 2d 128), a briefcase (*United States v. Berry* (7th Cir. 1977), 560 F.2d 861), and a purse (*People v. Lafayette* (1981), 99 Ill. App. 3d 830; *United States v. Monclavo-Cruz* (9th Cir. 1981), 662 F.2d 1285), reflect that an individual's expectation of privacy in such articles is reasonable. It is not merely the nature of the containers, but what individuals carry in them, how the articles are used, and society's recognition that an expectation of privacy in such articles is reasonable. A wallet, like a purse, is not just a piece of clothing. Similar privacy interests attach to it.

The People contend the warrantless search of defendant's wallet was proper as a delayed search incident to defendant's arrest. As noted, my colleagues agree. Based on the facts, I do not.

When a defendant is arrested for a felony an arresting officer may search without a warrant the arrestee and the area within his immediate control. This is an exception to the rule which proscribes warrantless police searches. (*Chimel v. California* (1969), 395 U.S. 753, 763, 23 L. Ed. 2d 685, 694, 89 S. Ct. 2034, 2040.) The reason for the exception is justified because of:

> "* * * the need to seize weapons and other things which might be
> used to assault an officer or effect an escape, as well as by the need

---

[1] My opinion interprets Federal constitutional principles. The Illinois bill of rights has a counterpart to the fourth amendment (*i.e.*, Ill. Const. 1970, art. I, §6). The latter provision warrants a different historical treatment than afforded the fourth amendment. This would not make for a difference in the outcome in this particular cause since the Illinois constitutional question was neither briefed nor argued.

to prevent the destruction of evidence of the crime—things which might easily happen where the weapon or evidence is on the accused's person or under his immediate control. * * *" (*Preston v. United States* (1964), 376 U.S. 364, 367, 11 L. Ed. 2d 777, 780, 84 S. Ct. 881, 884.)

Hence, if the need for this exception is not established, a warrantless search is unconstitutional.

Defendant was arrested for forgery and deceptive practices. When these offenses occurred is not in the record. When arrested, Mr. Hughes was not placed in restraints. He was allowed to drive his car home and park it. Then, he was driven in a police cruiser to the station. The subsequent search of his wallet was not conducted to locate a weapon. Nor was it executed so defendant could be thwarted from destroying evidence inside it. In fact, defendant could not have destroyed any such evidence since Officer Green was in physical possession of the wallet. Consequently, allowing a search incident to defendant's arrest was inconsistent with purposes for the exception's creation. In the absence of another exception to the rule prohibiting warrantless searches, the first search of the wallet was invalid.

The People contend the search was valid since it was a permissible inventory. In order for an inventory search to be reasonable it must advance three objectives; protection of the police from the risk of harm; safeguarding the owner's property interests; and protection of the police as custodians from liability for theft or damage claims to the prisoner's property. (*People v. Bayles* (1980), 82 Ill. 2d 128, 140-41.) The People bear the burden of proving the inventory search of Mr. Hughes furthered these three legitimate aims.

Inadequate facts exist which lend themselves to the conclusion this search was a valid inventory. Why was the officer looking in defendant's wallet? Hughes was unarmed and had not attempted to escape, although he could have readily attempted to do so in his own automobile. The officer was not looking in the wallet for a weapon. Even if he were, the wallet was not in defendant's control but the officer's physical possession. The police did not open the wallet for the purpose of inventorying its contents but wanted to search for contraband. Officer Green offered no testimony that he believed the wallet contained evidence which would diminish in value unless the wallet was opened and searched immediately. A warrant could have been sought. Alternatively, the police could have simply secured the wallet in an intact form in a police envelope without looking inside it. In other words, inventory it as a wallet. This wallet, as much as a purse, was a closed container in which, under these circumstances, defendant had a reasonable expectation of privacy. No evidence was produced which showed such a procedure would have created a

security risk to the police personally, or to the police department for potential liability for theft. The People adduced no testimony indicating the occurrence of past thefts or losses from the property lockers in the police station. It was the People's burden to establish this warrantless search was an exception to the warrant requirement, as well as the fact the search was reasonable. (*People v. Helm* (1981), 89 Ill. 2d 34.) This they failed to do. See also *People v. Hamilton* (1979), 74 Ill. 2d 457, 464-70.

The second search by the jailer was wrong only because the first search was warrantless and unreasonable. My colleagues say *People v. Richards* invalidates this second search. I disagree. First, with the absurd result reached in *Richards*. And second, with the application of *Richards* to this cause. If the police have correctly seized, examined, and inventoried articles from a person arrested for a felony, then looking at those items a second or third time does not violate the fourth amendment.

In *Richards* the object sought to be suppressed was a necklace Richards allegedly stole. Another person, the victim of the theft, was invited to examine this jewelry at the police station to determine whether it was her property. She identified it positively. Later, this "second look" was suppressed because it allegedly infringed on defendant's privacy interests in the jewelry and because a warrant could have been obtained. Such a ruling defies common sense. The victim of a theft or burglary has a right to identify and regain his stolen property. If the police have property in custody which they suspect is stolen, why not let the possible owner see it to determine if it is his? No one is harmed by such a procedure and justice is served. To require the formal application for a search warrant in such a situation is to indulge in purposeless judicial wheelspinning. The law already has too much of that.

There is, of course, a further distinction between the necklace in *Richards* and the wallet in the instant cause. A necklace is an apparel item made to be seen by others. A necklace is not used to house or carry things but to be looked at. A wallet or purse, on the other hand, is specifically designed, as well as perceived by its users, to carry items that are not only valuable but personal and confidential. Thus, a rationale that would allow an invited scrutiny of a seized chattel such as a jewelry item does not pertain to a scrutiny of the contents of a seized billfold or purse in which the owner has a reasonable expectation of privacy.

For the reason that the first examination of the billfold contents was improper, I concur with the result reached by the majority which suppresses the evidence seized. I divorce myself, however, from the rationale of the majority opinion wherein it upholds the invalid first search but then inexplicably concludes that the police had no right to take a second look at property which the majority believes was rightly within their custody.

Thus, I concur specially.