THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.* WARREN L. BEAN, Defendant-Appellee.

Third District   No. 82-52

Opinion filed July 12, 1982.

James T. Teros, State's Attorney, of Rock Island (John X. Breslin and Terry A. Mertel, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Robert Agostinelli and Thomas A. Lilien, both of State Appellate Defender's Office, of Ottawa, for appellee.

JUSTICE STOUDER delivered the opinion of the court:

An information filed in the circuit court of Rock Island County charged the defendant, Warren L. Bean, with unlawfully possessing less

than 30 grams of a substance containing lysergic acid diethylamide (LSD), a controlled substance. The defendant moved to suppress the contraband, arguing that it was the fruit of an illegal warrantless search. The circuit court agreed and ordered the evidence to be suppressed. The State appeals from that ruling. We affirm.

The circumstances surrounding the search, as stipulated by the parties, are sparse. On July 7, 1981, two Rock Island police officers arrested the defendant for resisting arrest and aggravated battery after a disturbance took place between the defendant and one officer outside the defendant's apartment. We assume that the defendant had been patted down for weapons and had been restrained, but that police had not then removed his personal property from him. They escorted him to the station house for booking, and, according to established police "booking procedures and inventory search," ordered him to surrender all his personal property, including his clothing and wallet. The defendant had kept the wallet, which was of a common billfold variety, in either his pants or shirt pocket. No contraband was visible from the folded wallet; an officer opened it and eventually discovered the controlled substance. Although the record is silent, we assume the LSD was held in some sort of package of its own, which the officer ripped open. At the suppression hearing, the defendant did not dispute that he was lawfully arrested for the offenses arising from the ruckus with the officer. Also, the State stipulated that the police had no probable cause to believe that the defendant possessed any controlled substances when his wallet was searched. Following the conclusion of counsels' arguments, the court granted the suppression motion, finding that, while the State had lawfully arrested the defendant, the delayed warrantless search of his wallet, which contained its own expectation of privacy independent from the arrestee's body, was unlawful as either a search incident to his arrest or an inventory search.

On appeal the State, relying on the recent opinion of *People v. Hughes* (1982), 105 Ill. App. 3d 738, 434 N.E.2d 828, renews its contention that the search of the defendant's wallet was lawful whether the search is viewed as incident to the defendant's lawful arrest or as an inventory of his possessions. On the other hand, the defendant argues that our recent decision in *People v. Lafayette* (1981), 99 Ill. App. 3d 830, 425 N.E.2d 1383, which the circuit court relied on in granting the motion to suppress, controls and mandates that we affirm the suppression order.

As Justice Powell commented in *Arkansas v. Sanders* (1979), 442 U.S. 753, 61 L. Ed. 2d 235, 99 S. Ct. 2586, while the general principles applicable to claims of fourth amendment violations are well established, State and Federal courts continue to be deluged with requests to exclude probative evidence in part because court decisions seemed to turn upon

apparently infinitesimal factual differences. (See also Ross, Search and Seizure Law Report, vol. 8, No. 9 (Sept. 1981).) Today we address one area of fourth amendment law that has indeed spawned a considerable amount of case law recently: the warrantless postponed or station house search of a piece of personal property, which the police have no independent probable cause to examine, following the defendant's lawful arrest. A brief review of this body of law illustrates the competing principles.

In *Chimel v. California* (1969), 395 U.S. 752, 23 L. Ed. 2d 685, 89 S. Ct. 2034, the Supreme Court affirmed the principle that a warrantless contemporaneous search incident to a lawful custodial arrest did not violate the fourth amendment. A search of the individual arrested may be made because, once arrested, he surrenders his right to privacy, which the fourth amendment protects. A custodial arrest also authorizes a search of the area within the arrestee's immediate control to prevent the arrestee from destroying evidence, becoming armed, or escaping. In *United States v. Robinson* (1973), 414 U.S. 218, 38 L. Ed. 2d 427, 94 S. Ct. 467, the Supreme Court emphasized that the lawful custodial arrest itself was a reasonable intrusion; once that was established, a warrantless search incident thereto required no separate probable cause or exigent circumstance. In *United States v. Edwards* (1974), 415 U.S. 800, 39 L. Ed. 2d 771, 94 S. Ct. 1234, the Supreme Court appeared to extend the search-incident-to-arrest rule to delayed warrantless searches of the arrestee and his belongings after he had been arrested and placed in custody. There, one day after the defendant's arrest, police took his clothing and searched it for evidence. Relying heavily upon the holding in *Robinson*, Justice White, speaking for a five-member majority, reasoned that because the warrantless search could have been made on the spot when the defendant was arrested, the same search could also have been made later when the arrestee was incarcerated. In a footnote, however, the court noted that, independent of the arrest, the police had probable cause to search and seize the arrestee's clothing at the station house. Notwithstanding the cautionary footnote in *Edwards*, many courts believed after *Robinson* and *Edwards* that a lawful arrest was the sole requirement authorizing a warrantless search, either during the arrest or later at the station house, of the arrestee as well as any items within the arrestee's immediate control. See 2 W. LaFave, Search and Seizure sec. 5.5, at 350 n.12 (1978).

Then the Supreme Court appeared to limit or at least re-examine the search-incident-to-arrest exception to the warrant requirement in *United States v. Chadwick* (1977), 433 U.S. 1, 53 L. Ed. 2d 538, 97 S. Ct. 2476. There the government arrested the defendants immediately after they had placed a locked footlocker in the open trunk of their car. Agents also seized the footlocker, which had been located a few feet from the

arrestees, and later opened it at the station house without obtaining a warrant. It contained marijuana. In affirming the defendants' motion to suppress, the Supreme Court rejected the government's argument that the footlocker was seized incident to the defendants' lawful arrest. Emphasizing the defendants' legitimate expectation of privacy in the footlocker's contents, as evinced by the closed, locked container, the court held that such rights were not diminished merely because the defendants were arrested nearby: "[u]nlike searches of the person, *United States v. Robinson* [(1973), 414 U.S. 218, 38 L. Ed. 2d 427, 94 S. Ct. 467]; *United States v. Edwards* [(1974), 415 U.S. 800, 39 L. Ed. 2d 771, 94 S. Ct. 1234], *searches of possessions within an arrestee's immediate control cannot be justified by any reduced expectations of privacy caused by the arrest.*" (*United States v. Chadwick* (1977), 433 U.S. 1, 16 n.10, 53 L. Ed. 2d 538, 551, n.10, 97 S. Ct. 2476, 2486 n.10.) The court, while reaffirming the principle that a contemporaneous search incident to a custodial arrest may be conducted without a warrant or independently based probable cause, rejected the government's contention that the search can later be made at the station house: "* * * warrantless searches of luggage or other property seized at the time of an arrest cannot be justified as incident to that arrest either if the 'search is remote in time or place from the arrest,' [citation] or no exigency exists. Once law enforcement officers have reduced luggage or other personal property not immediately associated with the person of the arrestee to their exclusive control, and there is no longer any danger that the arrestee might gain access to the property to seize a weapon or destroy evidence, a search of that property is no longer an incident of the arrest." (*United States v. Chadwick* (1977), 433 U.S. 1, 15, 53 L. Ed. 2d 538, 550-51, 97 S. Ct. 2476, 2485.) The Supreme Court applied *Chadwick* in *Arkansas v. Sanders* (1979), 442 U.S. 753, 61 L. Ed. 2d 235, 99 S. Ct. 2586, to invalidate a delayed warrantless search of an unlocked suitcase, finding that because a suitcase was in its fundamental character a repository for personal, private effects, a legitimate expectation of privacy arose in the contents. In a concurring opinion the author of *Chadwick*, Chief Justice Burger, said legitimate expectations of privacy in the contents of a container were not diminished upon arrest even where the arrestee carries the container in his hand. Since *Sanders*, the Supreme Court has made clear that the nature of the container is not determinative of whether its contents are to be clothed with legitimate expectations of privacy, saying that all containers must, in the eyes of the fourth amendment, afford the same degree of privacy to the contents held within. *United States v. Ross* (June 1, 1982), 50 U.S. L.W. 4580.

The authorities submitted by the parties, *Lafayette* and *Hughes*, show the uncertain effect *Chadwick* and its progeny have had on *Robinson* and *Edwards*. In *Lafayette* we held that a warrantless station

house search of the defendant's shoulder bag following his lawful arrest did not constitute a search incident to arrest and was therefore illegal. After comparing the defendant's purse-like shoulder bag to a container such as the one in *Sanders*, the *Lafayette* court concluded that, because the bag was a repository for personal items, those contents were clothed with legitimate expectations of privacy that were not diminished when the defendant was arrested. In reaching this conclusion, *Lafayette* relied on the language in *Chadwick* indicating that an arrest alone did not diminish legitimately held expectations of privacy in personal property even though it may have been lying within the arrestee's immediate control. Once the defendant was restrained and his purse taken into police possession, it could no longer be argued that the search of its contents was justified to prevent the arrestee from destroying evidence, becoming armed, or escaping. (See also *People v. Helm* (1981), 89 Ill. 2d 34, 431 N.E.2d 1033 (station house search of the arrestee's purse not incident to her lawful arrest).) *Hughes*, on the other hand, specifically involved the legality of a so-called second look or subsequent station house search of personal property, a wallet, which had been previously seized from the defendant's person during booking following his arrest. In *dicta*, however, the court discussed the first search, saying it was lawful even though police had no independent probable cause or exigent circumstance to search the wallet. *Hughes* interpreted *Chadwick* more narrowly, finding that it applied only to " 'personal property not immediately associated with the person of the arrestee.' " (*People v. Hughes* (1982), 105 Ill. App. 3d 738, 741, quoting from *United States v. Chadwick* (1977), 433 U.S. 1, 15, 53 L. Ed. 2d 538, 551, 97 S. Ct. 2476, 2485.) The *Hughes* court reasoned that because the wallet was contained in the defendant's clothing at the time he was arrested, it was "immediately associated" with the defendant and thus fell within the exception to *Chadwick*. The court then applied *People v. Richards* (1981), 103 Ill. App. 3d 1120, 432 N.E.2d 276, *appeal allowed* (No. 56275) (May 1982), to find that the evidence was nonetheless inadmissible because the second search was made without a warrant.

Because *Hughes*'s discussion of *Chadwick* did not form the basis of that court's opinion regarding the propriety of the warrantless second search, we do not feel bound by its reasoning. Therefore, we hold that the station house search of the defendant's wallet was unlawful because, regardless of whether the lawful arrest excused the requirement of a warrant, the search was not founded upon independently based probable cause. We can discern no possible distinction for fourth amendment purposes between the wallet here and the purse or shoulder bag in *Layfayette* or *Helm*; legitimate expectations of privacy reposed in both containers. Merely because a wallet folds shut while a purse may fasten shut will not change a person's rights under the fourth amendment, for

every container which shields its contents from plain view provides constitutionally enforced protection to its owner. *United States v. Ross* (June 1, 1982), 50 U.S.L.W. 4580.

Even assuming that a constitutionally viable distinction exists between items immediately associated with the arrestee's person (*Chadwick*) and items within the arrestee's immediate control (*Chimel*) as was suggested in *Hughes* (see also 2 W. LaFave, Search and Seizure: A Treatise on the Fourth Amendment sec. 5.5(a) (1978)), we refuse to follow *Hughes* insofar as it excuses not only the warrant requirement, but also the requirement of independently based probable cause when police conduct delayed warrantless searches of the contents of a container immediately associated with the arrestee's person. Prior to *Edwards* the fourth amendment's guarantees of probable cause and a warrant based thereon were inexorably tied together. *Chimel* and *Robinson* held that a contemporaneous search incident to arrest not only excuses the requirement that a search be preceded by a judicially issued warrant, but also that a search be conducted without separately established probable cause. *Edwards* extended the search-incident-to-arrest rule to station house searches but only addressed the issue of whether a warrant was necessary to search items immediately associated with the arrestee; the majority specifically declined to reach the issue of whether a delayed warrantless search of such items can be made without probable cause because probable cause existed in *Edwards*. In *Chadwick* and *Sanders* police had probable cause to seize the contents of the containers, but the delayed searches were ruled unconstitutional because they were made without a warrant, which of course must be founded upon probable cause. But *Chadwick* and Chief Justice Burger's concurrence in *Sanders* make clear that the legitimate expectations of privacy existing in the contents of closed containers are not extinguished regardless of the container's propinquity to the arrestee. Once the defendant is taken into custody and the container is placed in police possession, the justification to search the contents without probable cause—to prevent the destruction of evidence, injury to police, or escape of the arrestee—disappears. We believe that after *Chadwick* and *Sanders*, no longer will the search-incident-to-arrest exception to the warrant requirement also authorize delayed searches of items immediately associated with the arrestee without probable cause. Here, without reaching the issue of whether the defendant's wallet falls within *Chadwick*'s "immediately associated" exception to the warrant requirement, we hold that even where closed containers are immediately associated with the arrestee's person, police may not search and seize its contents at the station house without independently based probable cause.

Nor did the instant station house examination constitute a valid

inventory of the wallet's contents. Even though an inventory is not technically considered to be a search (*South Dakota v. Opperman* (1976), 428 U.S. 364, 49 L. Ed. 2d 1000, 96 S. Ct. 3092), it nonetheless invades legitimate expectations of privacy and that intrusion is tested for its constitutionality by an application of the fourth amendment reasonableness standard. (*People v. Bayles* (1980), 82 Ill. 2d 128, 411 N.E.2d 1346.) Our supreme court in *Bayles* and *Helm* announced that personal containers seized incident to a lawful arrest may not be opened and inventoried absent exigent circumstances which justify the intrusion. Instead property must be sealed if possible and properly stored. Here, the wallet's nature did not prevent it from being safely sealed and stored to protect the items kept inside and to protect police from claims of lost property. *People v. Lafayette* (1981), 99 Ill. App. 3d 830, 425 N.E.2d 1383.

For the foregoing reasons, we affirm the order suppressing evidence entered in the circuit court of Rock Island County.

Affirmed.

ALLOY and SCOTT, JJ., concur.